THE BOARD OF EDUCATION OF THE TOWNSHIP OF JEFFERSON, PLAINTIFF-RESPONDENT, v. NATIONAL UNION BANK OF DOVER, DEFENDANT-APPELLANT.

Argued May 19, 1938—Decided September 16, 1938.

For the defendant-appellant, *Samuel C. Meyerson.*

For the plaintiff-respondent, *King & Vogt* (*Elmer King* and *Robert H. Schenck*).

The opinion of the court was delivered by

BODINE, J. The appellant, a banking corporation, appeals from a judgment in favor of the plaintiff, a board of education of one of the townships of this state. The bank had charged against the account of the board of education from August 13th, 1933, to February 16th, 1937, eighty-three school board checks, the signatures of the payees being forgeries. The judgment was for the aggregate of these checks, with interest, from the date each was improperly charged against the account. It was stipulated that:

"The payees named in all of disputed checks or warrants were individuals residing in the township of Jefferson or elsewhere in the county of Morris, who at various times had had dealings with the Board. As to the checks or warrants in suit, the Board of Education was not indebted to any of them, and none of them was entitled to receive the money

for which each check had been drawn, and none of them knew of them or had any interest in them. They were all regular as to form, and the signatures of the president and clerk of the board and of the custodian of the school fund were genuine. The Board never authorized or knew of the issuance of the checks or warrants in suit. The clerk and custodian were employes of the Board of Education. The president was a member of the Board of Education. The clerk of the board forged the names of the payees in the checks in question, and subsequently deposited most of these checks to his personal account in the defendant bank. The said clerk and the president of the board were subsequently indicted on a series of indictments arising out of the said forgeries, and on one of the cases which was tried, the clerk was convicted of forgery, and the president was convicted of conspiracy to defraud the Board of Education from which conviction an appeal has been taken. Other indictments against both the clerk and the president covering other transactions are still undisposed of. Each month from January 1st, 1935, defendant bank rendered a monthly statement to the plaintiff, which was delivered and received by the custodian, and with the said statements there was returned monthly the checks with forged endorsement of payee which had been paid during the current months. No objection to the correctness of the account was made at any time until March 10th, 1937, when the suspicions of the custodian having been aroused, she called the attention of the board's attorney to the checks in question, with the result that he communicated verbally with the officers of the bank, and on April 8th, 1937, wrote on behalf of the Board of Education demanding that it restore the Board's account and reimburse the board for the loss. The bank refusing to do this, the suit was brought."

"Generally a bank is liable to the drawer of a check for paying it on a forged endorsement, in the absence of estoppel, contributory negligence, or ratification, or unless the money has reached the intended person. Since, under the contract between a bank and its depositor, the bank is bound to pay checks only to persons designated by the depositor, *supra,*

section 340, it becomes the duty of the bank to its depositor, at its peril, to determine the genuineness of the endorsements on his checks and pay only where they are genuine." 9 *C. J. S.* p. 734.

This doctrine of law prevails in this state. *Harter* v. *Mechanics Bank,* 63 *N. J. L.* 578; *Pratt* v. *Union National Bank,* 79 *Id.* 117; *Pannonia Building and Loan* v. *West Side Trust Co.,* 93 *Id.* 377.

It was argued that the checks or warrants in question were bearer instruments and passed title on delivery, because they were made to fictitious payees.

Section 8 of the Negotiable Instruments law (*Rev. Stat.* 7:2-8), provides: "The instrument is payable to order where it is drawn payable to the order of a specified person or to him or his order \* \* \*." The checks were made payable to the order of specified persons.

Section 9, of the N. I. L. (*Rev. Stat.* 7:2-9, ¶ III), is as follows: "The instrument is payable to bearer: (3) When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable." The checks were made by the board of education through its regularly authorized officer.

One of the questions to settle is whether the drawer of the checks had knowledge that the drawee was fictitious. *Montgomery Garage Co.* v. *Manufacturers, &c., Co.,* 94 *N. J. L.* 152; *Ocean Corp., Ltd.,* v. *Lincoln National Bank,* 112 *Id.* 550. Of course, the agents of the board, Kolar, certainly, and Zeek, possibly, knew of the fraud, but the learned trial judge quite properly found: "The president, clerk and custodian were mere agents or instrumentalities of the board in signing and issuing its checks or warrants. The board in fact bore the relation of drawer to them, and it is apparent that information as to the fraud being practiced by Kolar, the clerk, was deliberately and carefully concealed from members of the board and Mrs. Robinson. In *Deal* v. *Sieling,* 102 *N. J. L.* 585, 589, it was said: "\* \* \* conceding the knowledge of the engineer of the violation of the contract by the contractor, coupled with the former's consent to such

violation—thereby joining with the contractor in the perpetration of a fraud upon his principal—such knowledge will not be imputed to the respondent' (principal). See, also, as to the negligence of municipal agents in the performance of public duties, *City of Paterson* v. *Erie Railroad Co.*, 78 *N. J. L.* 592, and *Reilly, Admx.*, v. *New Brunswick*, 92 *Id.* 547."

Mrs. Robinson, the custodian of the school moneys, testified that she never attended the meetings of the board of education. Kolar would bring the checks to her house and she would sign them after he had signed them and sometimes after Zeek had signed them. When she received the checks from the bank she placed them in order and saw that the balance was correct. She did not know the signatures of the payees and must have had very little interest in the matter because several checks to her order were paid on a forged endorsement.

That the frauds by the board's officers cannot be constructively imputed to the board is clear from the law as laid down in *Pannonia Building and Loan Association* v. *West Side Trust Co.*, 93 *N. J. L.* 377; *Tomlin* v. *Hildreth*, 65 *Id.* 438; *Holler* v. *Ross*, 68 *Id.* 324, and *Camden Safe Deposit and Trust Co.* v. *Lord*, 67 *N. J. Eq.* 489.

The Negotiable Instruments law provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any part thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." *Rev. Stat.* 7:2-23.

The bank had no right to charge the checks with forged endorsements to the account of the board of education in the absence of negligence or estoppel chargeable to the depositor. *Harter* v. *Mechanics National Bank, supra; Pannonia Building and Loan Association* v. *West Side Trust Co., supra.*

The negligence of persons employed by municipal corporations as public servants charged with a public duty is not imputable to the employer. *Paterson* v. *Erie Railroad, supra; Allas* v. *Rumson*, 115 *N. J. L.* 593.

It is not possible, upon the facts of this case, to invoke the doctrine of estoppel. When the vouchers were returned to Mrs. Robinson, she checked them over. She did not examine the endorsements. Her failure so to do cannot estop the board of education from complaining of the improper charging to its account of the drafts containing forged drawee signatures. Kolar had no authority to divert the school moneys to his own account. The bank knew this and it was charged with a duty to scrutinize the endorsements by which it obtained title. It cannot be heard to say that because it was derelict in its duty the negligence of an employe of the board in not conducting a thorough audit each time the vouchers were returned can preclude a recovery.

*Rev. Stat.* 7:4-7 provides as follows: "No bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment such depositor shall notify the bank that the check so paid was forged or raised." The statute relates only to forged or raised checks. None of the checks in question in this case were raised or forged. They were all good on their face. The vice was the forging of the payee's name, and had the bank used any care the fraud speedily would have been discovered.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.

*For reversal*—None.