MARSHELLE R. TETTE, Respondent, v MARINE MIDLAND BANK, Appellant.

Fourth Department, January 23, 1981

APPEARANCES OF COUNSEL

*Harter, Secrest & Emery (Bruce E. Hansen* of counsel), for appellant.

*Robinson, Williams, Angeloff & Frank (Bernard A. Frank* of counsel), for respondent.

OPINION OF THE COURT

CALLAHAN, J.

On May 18, 1977 plaintiff loaned Asore Realty Corporation $42,000 as evidenced by a promissory note executed by Philip J. Scardino, individually and as president of the corporation. In January, 1978, when demand was made for payment in full, Scardino and his corporation defaulted on the note. Lacking the $40,000 then due on principal, Scardino offered to sell plaintiff a home under construction and owned by the corporation with the balance due on the loan being applied to the purchase price. A preliminary outline of an agreement was submitted to plaintiff for review by her

attorney. Thereafter, plaintiff sent Scardino a purchase offer signed by her on March 31, 1978 which contained these terms:

"PURCHASE PRICE: Forty-Five Thousand Dollars ($45,-000.).

"TERMS: Five Thousand Dollars ($5,000.) cash on date of transfer of title. For the balance I will cancel a promissory note in my possession made by the seller or a principal thereof, in the amount of Forty Thousand Dollars. Said cash on closing in cancellation of the promissory note shall be payment in full of the purchase price pursuant to this contract.

"Risk of loss or damage by fire or any other casualty until closing is assumed by seller."

On April 10, 1978 before agreement was reached as to the purchase price or any contract was ever formalized, the house under construction was destroyed by fire. Upon contacting Scardino about the fire, plaintiff asserts she was advised not to worry that her name would be on the fire insurance check. To protect plaintiff's interest, her attorney wrote the Hartford Insurance Company advising, "[s]he has a lien on the above premises by virtue of Forty Thousand Dollars ($40,000.) made in advance payments towards the purchase price thereof. Would you please mark your files accordingly, so that any check issued in payment of the loss at said property reflects the name of my client, as well as any other loss payee." Thereafter, Hartford issued a check in the amount of $65,537.04 payable jointly to "Asore Realty Corporation, The National Fire Adjustment Co., Home Federal Savings & Loan Assoc. as mortgagee, Mrs. Marshall Tette & Lincoln First National Bank 1521 East Main Street, Rochester, NY". The check was sent to Scardino who, it is conceded, forged the payees' names other than Asore Realty Corporation and presented it to Marine Midland Bank (Marine) which then credited one of Scardino's corporate accounts with the entire proceeds.

Plaintiff commenced the instant action against Marine Midland Bank in conversion seeking to recover for the improper payment by Marine of a check bearing the forged indorsement of plaintiff. The check drawn by Hartford was

in full satisfaction of all claims to the proceeds upon a policy covering a house owned by Asore Realty Corporation and destroyed by fire. On its motion for summary judgment, Marine, the depository-collecting bank, acknowledges that the president of Asore Realty Corporation, Scardino, forged the name of several of the payees on the check and presented it for payment to Marine. The bank honored the check by crediting one of Scardino's corporate accounts. Scardino thereafter withdrew most of the funds from that account.

In two recent cases, resolved on other grounds, the Court of Appeals noted but did not rule on the question of whether a depository-collecting bank, as opposed to a drawee, may be held liable in conversion under the Uniform Commercial Code (§ 3-419)* to a payee whose signature is forged (see *Hechter v New York Life Ins. Co.*, 46 NY2d 34, 38, n 3; *Hutzler v Hertz Corp.*, 39 NY2d 209, 217, n 3).

Subdivision (3) of section 3-419 of the Code clearly implies that a depository bank may be held liable to a payee in conversion if any one of three conditions are met: (1) the depository bank cashed the check over a restrictive indorsement and applied the proceeds in a manner contrary to that indorsement; (2) the depository bank still has proceeds in its hands; and (3) the depository bank did not act in accordance with reasonable commercial standards (White and Summers, Uniform Commercial Code [1972 ed], § 15-4, p 508). Many jurisdictions recognize that a depository bank may be held liable in conversion under the Code to a copayee whose signature is forged or missing (see, e.g., *Equipment*

---

* "§ 3-419 Conversion of Instrument; Innocent Representative.

"(1) An instrument is converted when * * *

"(c) it is paid on a forged indorsement.

"(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

"(3) Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

*Dist. v Charter Oak Bank & Trust Co.*, 34 Conn S 606; *Peoples Nat. Bank of Md. v American Fid. Fire Ins. Co.*, 39 Md App 614; *Berkheimers, Inc. v Citizens Val. Bank*, 270 Ore 807; *Conwed Corp. v First-Citizens Bank & Trust Co.*, 262 SC 48; *Atlas Bldg. Supply Co. v First Independent Bank of Vancouver*, 15 Wash App 367). These holdings are consistent with pre-Code determination in New York (see, e.g., *Hillsley v State Bank of Albany*, 24 AD2d 28) as well as with limited holdings addressing the issue since the adoption of the Code (see *Belmar Trucking Corp. v American Trust Co.*, 65 Misc 2d 31; see, also, *United States v Bankers Trust Co.*, 17 UCC Rep Serv 136 [EDNY, 1975]).

Upon our review of the record, we note that Marine failed to submit any proof that would suggest it acted in a commercially reasonable manner, nor did it set forth any fact that would warrant a trial on the issue. Accordingly, it was error for Special Term not to grant plaintiff summary judgment on the issue of liability.

We must now concern ourselves with a more interesting question, that is, what amount, if any, may plaintiff recover in damages against Marine for its failure to act in accordance with reasonable commercial standards. Plaintiff claims that she was properly named a payee of the proceeds of the insurance policy because the $40,000 she advanced towards the purchase gave her an equitable lien on the property (see *Sprague v Cochran*, 144 NY 104). She further urges that she has an equitable right to the proceeds in that there was a binding contract to convey the property under the doctrine of part performance (see 56 NY Jur, Statute of Frauds, § 245). However, the undisputed facts in this record do not support plaintiff's contentions but rather establish that she has no right to the proceeds.

Plaintiff's loan to Asore Realty Corporation, evidenced by an installment demand promissory note, preceded the negotiations for her purchase of the house now represented by the insurance proceeds and was collateral to the negotiations inasmuch as it was made for a purpose unrelated to the construction or purchase of the house. After due demand was made to Scardino to repay the $40,000 in principal remaining on the loan, Scardino indicated that he could not

repay the loan at that time and offered to sell plaintiff the house, then under construction, with the balance of the loan being applied towards the purchase price. A contract, however, was never formalized. While the record contains a purchase offer signed by the plaintiff, there is no writing signed by Scardino or his corporation, which owned the house. The record is devoid of any proof to show that plaintiff canceled the promissory note and applied the loan towards the purchase of the house. The doctrine of part performance cannot be applied to take this case out of the Statute of Frauds since there has been no performance unequivocally referable to the alleged agreement *(Burns v McCormick*, 233 NY 230, 232).

We conclude that plaintiff was merely a general creditor without any lien on the property destroyed by fire. As such, plaintiff had no right to the insurance proceeds since she was not a named insured (31 NY Jur, Insurance, § 1504). Even if she had a lien on the property she would have no claim to the insurance proceeds *(McGraw-Edison Credit Corp. v Allstate Ins. Co.*, 62 AD2d 872; 5 Couch, Insurance [2d ed], § 29:171). A policy of fire insurance is a personal contract which does not attach to the insured property or run with the land *(Andrello v Nationwide Mut. Fire Ins. Co.*, 29 AD2d 489; *Galante v Hathaway Bakeries*, 6 AD2d 142, 149). Nor in our view did plaintiff acquire any right to the proceeds by virtue of the gratuitous statement by Scardino that her name would appear on the insurance check.

Subdivision (2) of section 3-419 of the Uniform Commercial Code explicitly provides that "[i]n an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument." It is readily apparent then from reading section 3-419 of the Uniform Commercial Code that the draftsman of the Code intended to impose harsher treatment on a drawee bank than on a depository bank (see Uniform Commercial Code, § 3-419, Official Comment No. 4). In the case of a depository bank paying out on a forged instrument, the Code contemplates the bank may reduce recovery by the payee whose signature is forged to the extent it can show

that the underlying *obligation* upon which the check was issued has been satisfied or for any reason is unenforceable. Hence, in the instant case, Marine may assert the absence of any interest of plaintiff in the proceeds to defeat recovery by plaintiff. As we view it from this record, Marine may defeat more than a nominal recovery by plaintiff since she had no interest in the proceeds nor had any right to compel the insurance company to issue the check with her name on it (cf. *Booth v Powers*, 56 NY 22, 27; see, also, *Griggs v Day*, 136 NY 152, 161; 10 NY Jur, Conversion, § 70, p 581; 1955 Report of NY Law Rev Comm [vol 2], p 1079).

Consequently the order should be modified to grant summary judgment to plaintiff on the liability issue. We remit for further proceedings to fix nominal damages only in accordance with this opinion.

Finally, we note this caveat. There is apparent inconsistency in the operation of subdivision (2) of section 3-419 of the Uniform Commercial Code. Recovery against a drawee is deemed to be absolute whereas a depository-collecting bank may invoke defenses to recovery. We fail to perceive a rationale supporting this anomalous treatment, since the latter type of bank often will be in a better position than the former to discover a forged or unauthorized indorsement. The matter, however, is one for the Legislature. The California Legislature, perceiving this inconsistency, eliminated the "absolute" recovery against the drawee and replaced it with the "presumed" recovery to cover all cases (see California Commercial Code, § 3419, subd [2]). However, the permanent editorial board for the official Uniform Commercial Code has declined to advocate the change adopted in California.

DILLON, P. J., CARDAMONE, SCHNEPP and MOULE, JJ., concur.

Order unanimously modified and, as modified, affirmed, with costs to plaintiff and matter remitted to Supreme Court, Monroe County, for further proceedings, in accordance with opinion by CALLAHAN, J.