231 N.J. Super. 57 (1989)
555 A.2d 8
RONALD R. NUTT, SR., PLAINTIFF-RESPONDENT,
v.
THE CHEMICAL BANK, THE FIRST NATIONAL BANK OF NEW JERSEY AND THE FIRST MORRIS BANK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1989.
Decided February 24, 1989.
*59 Before Judges DREIER and HAVEY.
Arthur L. Raynes argued the cause for appellant First Morris Bank (Wiley, Malehorn & Sirota, attorneys; Arthur L. Raynes, of counsel, on the brief and supplemental letter, Lucy F. Dowd, on the brief).
Theodore Kozlowski argued the cause for respondent (Theodore Kozlowski, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
The First Morris Bank (First Morris) appeals from a judgment entered in favor of plaintiff, Ronald R. Nutt, Sr., in the amount of $30,425.95.
*60 In a previous action, Nutt brought suit against The Equitable Life Assurance Society (Equitable). His attorney in that action was Henry S. Gordon. As a result of that litigation, on April 26, 1984 Equitable drew a check for $21,639.00 on its account with The Chemical Bank (Chemical), payable to "Ronald R. Nutt and Henry S. Gordon, Esq." Gordon endorsed the check "Ronald R. Nutt by Henry S. Gordon agent and attorney in fact," and deposited it in his trust account with defendant First Morris, which through a collecting bank, First Fidelity Bank (First Fidelity), obtained payment from Chemical, the drawee.
The plaintiff complains that that money was rightfully his and he never received any of it. Nutt filed a complaint against Chemical stating that he was subrogated to the rights of Equitable and alleging that Chemical had breached its contract with Equitable by paying the check to First Morris "over an `unauthorized signature,'" a violation of N.J.S.A. 12A:3-401. On March 4, 1985 Nutt amended that complaint to include the presenting bank (First Fidelity) and the depositary bank (First Morris) as defendants. Plaintiff's claims were based upon both conversion and breach of contract.
Chemical and First Fidelity each filed an answer and cross-claim for indemnification and contribution against First Morris, and First Morris filed a third-party complaint, and a claim for contribution, against Gordon. Thereafter, First Morris agreed to indemnify Chemical and First Fidelity, and the cross-claims were dropped.
Nutt made five unsuccessful motions for summary judgment; however, the sixth motion, the judgment which is here under review, was granted. The issues to be decided on this appeal are whether this summary judgment was properly granted on the liability issue, and, if so, whether summary judgment properly was entered on the damages question.

I
The standard by which an appellate court reviews a grant of summary judgment is the same as that by which the trial court *61 assesses the request: if, after reviewing the record, "there is no genuine issue as to any material fact," summary judgment will be granted or affirmed. R. 4:46-2. Even though the pleadings may raise some minor issue of fact, if there are no "material issues," then summary judgment can be granted. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
The amended complaint in this case alleges that First Morris is liable to the plaintiff for breaching its duties of presentment under N.J.S.A. 12A:4-207 and for conversion under N.J.S.A. 12A:3-419. Under N.J.S.A. 12A:4-207, a collecting bank must warrant that it has good title, and has no knowledge that the signature on the instrument is unauthorized. According to case law, a depositary bank presenting a check with a forged indorsement to a drawee bank may ultimately be held liable for a breach of the implied warranty that it had "good title." Clients' Sec. Fund v. Allstate Ins., 219 N.J. Super. 325, 329-330 (App.Div. 1987). In addition, First Morris is specifically liable to all down-stream banks in the collection process by its guaranty of all prior indorsements. In short, N.J.S.A. 12A:4-207 places the burden of loss from forged indorsements on the bank which first accepts such forgeries. Clients' Sec. Fund, at 331; Perkins State Bank v. Connolly, 632 F.2d 1306, 1319-1320 (5th Cir.1980).
Most of the material facts in this case were stipulated. The check from Equitable was made out to "Ronald R. Nutt and Henry S. Gordon, Esq." (emphasis added); Ronald Nutt never signed the check; and Henry Gordon, in his own words, "secretly signed [Nutt's] name and took that money."[1]
*62 N.J.S.A. 12A:3-404(1) states that an unauthorized signature is wholly inoperative unless ratified or unless the person whose name is signed is precluded from denying it. The signature, however, operates as the signature of the unauthorized signer against any party who in good faith pays the instrument. Therefore, Gordon's indorsement, although in the name of Nutt, operated as the valid indorsement of Gordon himself, who was one of the two named payees on the instrument.
Under N.J.S.A. 12A:4-401(1) Chemical Bank was precluded from charging Equitable's account with the amount of the instrument, since Equitable's order was to pay only if the indorsement of both Nutt and Gordon were present. At the present posture of the case, Nutt has been subrogated to Equitable's claims against Chemical and First Morris which, in turn, must under its statutory obligations and its guarantee of prior indorsements, indemnify Chemical Bank. Therefore, although the claim before us is principally that of Nutt against First Morris, the rights of the parties stem from the relation of Equitable and Chemical, i.e., drawer and drawee.[2]
In addition, since an instrument is converted when it is paid on a forged indorsement, Nutt in his own right as a payee properly has asserted a conversion claim under N.J.S.A. 12A:3-419(1)(c). N.J.S.A. 12A:3-419 provides in part:
(1) An instrument is converted when
(a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or

*63 (b) any person to whom it is delivered for payment refuses on demand to pay or to return it; or
(c) it is paid on a forged indorsement.
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
As there is no question that the indorsement was forged, summary judgment on the issue of liability was properly entered in favor of Nutt and against First Morris.[3]

II
The harder question in this case concerns the issue of damages. We find the trial judge erred in entering summary judgment on the damages question. The statute is deceiving. N.J.S.A. 12A:3-419(2), quoted earlier, states that "in an action against a drawee [for conversion on a forged indorsement] the measure of the drawee's liability is the face amount of the instrument." The statute continues, stating that if the action is brought against any other party liability is merely "presumed to be the face amount of the instrument."
*64 As will be explained, however, the statutory absolute liability envisioned against a drawee, here Chemical (indemnified by First Morris), is inapplicable. Gordon's indorsement of Nutt's name was unauthorized, and an unauthorized signature is a "forged indorsement." Salsman v. Nat'l Community Bank of Rutherford, 102 N.J. Super. 482, 489 n. 1 (Law Div. 1968), aff'd o.b. 105 N.J. Super. 164 (App.Div. 1969). Under a literal reading of the statute, the claim against the drawee would be one on a forged indorsement thus apparently subjecting Chemical (and therefore First Morris) to absolute liability. We need not decide here, however, whether the statute actually mandates such absolute liability.[4]
In Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J. Super. 170 (App.Div. 1981), this court recognized that N.J.S.A. 12A:3-419(1)(c) requires that an instrument paid on a forged indorsement be considered converted. Id. at 174. But in Humberto Decorators, in considering the amount of damages to be paid, we reviewed the record to see whether there was merit in defendant's claim that the plaintiff had received partial payment from the party that had incorrectly received payment *65 of the check without the plaintiff payee's indorsement. We stated:
Defendant also contends that the judge erred in determining that plaintiff was entitled to $28,205.09 because there was no evidence of a debt in that sum and because plaintiff had received partial payment from [the recipient of the funds]. The record adequately supports the finding of the trial judge that the face amount of the check represented [the recipient's] actual indebtedness to plaintiff. We will not disturb a finding adequately supported by credible evidence in the record. [Id. at 175]. (citations omitted).
This discussion is at least some authority that the drawee is not automatically liable for the face amount of the check, irrespective of the amount lost by the payee.
The factual damage question in our case is even stronger than that in Humberto Decorators. Since this case involves joint payees, only one of whose name was forged, the rule of absolute liability cannot prevail where the defendant bank's alleged damage issue involves disputed claims between the two payees concerning how the proceeds were to have been divided. Whether defendant's obligation is absolute or only presumptive, it is liable to both Nutt and Gordon for the face amount of the check. To the extent that the bank has overpaid Gordon, it may recoup these funds and has asserted this right by way of third-party complaint. To the extent that it has underpaid Nutt, it must now remedy this wrong. First Morris can be liable to Nutt for as much as the face amount of the check if, as alleged by Nutt, Gordon was to have received nothing from the proceeds, and an alleged $6,500 payment by Gordon to Nutt was indeed a separate repayment of a loan. But, if in fact, Gordon were to have received his legal fee from the proceeds, then Nutt would be entitled to the settlement amount, less the fee. If the parties' agreement was that Nutt was to have received nothing but $6,500, and the balance was to have been retained by Gordon in payment for legal services and in settlement of other claims of Gordon against Nutt, then there may be no payment at all. These are all allegations between Gordon and Nutt raised by their depositions, and creating factual issues *66 inappropriate for resolution on a motion for summary judgment.
We therefore determine that insofar as the damage question is concerned in this joint-payee matter, where the forger was one of the payees, the rule of absolute liability as opposed to presumptive liability (if it has any general vitality at all), is inapplicable. We reverse the decision of the trial judge on the issue of damages and remand the matter to the Law Division for trial on that issue alone.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Defendant's brief asserts that "based on the testimony of Messers. Nutt and Gordon ... Mr. Gordon was, in fact, authorized to endorse the check for Mr. Nutt." The sole citation for this proposition is the title page of the respective depositions. Such citation does not comply with R. 2:6-2(a)(4), requiring "references to the appendix and transcript." This means specific references, not merely a notation to a cover page. We have separately perused these depositions and find no reference that Gordon was either expressly or impliedly authorized to endorse the check for Nutt.
[2] Nutt must not be prejudiced by the fact that First Morris here represents not only its own interests, but also, as indemnitor, the interests of Chemical and First Fidelity. Nutt may avail himself of the most extensive of the rights he has against any of these three defendants. Regarding the conversion claim, Nutt's potential rights appear greatest against the drawee, Chemical, under N.J.S.A. 12A:3-419(2). But as is explained infra, these enhanced rights are illusory.
[3] At oral argument we discussed First Morris' alleged ratification claim, and asked the bank's attorney if he could show any reference to plaintiff's alleged ratification by Nutt of Gordon's indorsement of Nutt's name. By a post-argument submission counsel quoted the following portion of Nutt's deposition as evidence of the alleged ratification:

I said, `I've lent you money off and on. I don't understand how you could do this to me,' and that's when I told him he must have forged the check and I had never seen the checks first. But, it had to be in my name. It was my money due back to me that I paid out of my pocket....
This conversation was said to have occurred in the summer of 1984. Nutt first obtained his attorney in October 1984 and the initial complaint against Chemical was filed in January 1985, only three months after Nutt consulted his attorney. The claim was presented against First Morris by the amended complaint in March 1985. Although defendant is correct that an unauthorized signature may be ratified, N.J.S.A. 12A:3-404(2), we see no basis in this testimony upon which a reasonable jury could determine that Nutt's assertion of surprise, anger and claim of forgery could be interpreted as a ratification of Gordon's acts.
[4] Even if the section were applicable, the statute cannot mandate absolute liability in all cases. For example, if the payee had been fully or partially paid by a repentant forger, it would make no sense to require a second full payment by the drawee or its indemnitor, because the drawee or indemnitor failed to dishonor the check based upon the forged indorsement. The concept of unjust enrichment cannot be read out of the law by this section when there is no indication that the Legislature intended such a result. We understand that the National Conference of Commissioners of Uniform State Laws is reconsidering Chapters 3 and 4 of the Uniform Commercial Code. While no definite action has yet been taken, the conclusive presumption no longer appears in the current discussion draft of this section, and the proposed comments explain, citing an example very much the same as this case, that there is no rational basis to support the current conclusive presumption.

We suggest that even if there were a single payee who sought to enforce the instrument as drawn, the requirement of payment by the drawee of the full amount should be conditioned upon proof that the payee had not received all or part of the funds from either the forger or other person to whom the proceeds of the instrument had been diverted after payment on the forged indorsement.