721 A.2d 34 (1998)
317 N.J. Super. 50
COUNTY CONCRETE CORP., Plaintiff-Appellant,
v.
Gene SMITH and Gene Smith Contractors, Inc., Defendants, and
National State Bank and Chemical Bank, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted December 2, 1998.
Decided December 16, 1998.
William J. Vosper, Jr., Stillwater, for plaintiff-appellant (Mr. Vosper, on the brief).
Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, Woodbridge, for defendants-respondents (John D. North, of counsel and on the brief; Christine F. Marks, on the brief).
Before Judges BAIME, CONLEY and A.A. RODRIGUEZ.
The opinion of the court was delivered by CONLEY, J.A.D.
This appeal requires us to address the issue of "absolute liability" of a drawee bank under N.J.S.A. 12A:3-419(2) where the payee of a converted check has received the monies intended by way of a replacement check. In our prior opinion which reversed summary judgments in favor of the defendant banks and remanded for trial, we raised, but did not decide, this issue. County Concrete Corp. v. National State Bank and Chemical Bank, No. A-1136-94 at 5-7 (App. Div. June 12, 1995). We now conclude that N.J.S.A. 12A:3-419(2) does not preclude a drawee bank from obtaining a setoff for the amount of the replacement check received by the payee against the amount of the converted check. Since the plaintiff payee here received the full amount of the monies the first check was intended to transfer to it, it sustained no loss from the conversion of the first check and, therefore, is entitled to no further relief, as properly determined by the trial judge.

I
The critical facts are not complex. Plaintiff was a supplier of concrete to a subcontractor, Gene Smith Contractors, Inc. (Smith), on a job site owned by Roxville Associates (Roxville). The general contractor was Modular Structures, Inc. (Modular). During the course of the job, Modular failed *35 to timely pay its subcontractors, including Smith. As a result, by June 1990, plaintiff supplier was owed money by Smith for its supplies and had threatened to make no further deliveries. At that point, in order to ensure further deliveries of concrete to keep the job going, Roxville intervened. Salvatore Davino, president of Roxville, testified to the following oral agreement with John Crimi, the president of County Concrete.
1. Roxville Associates would pay $81,732 on account of the amounts past due to plaintiff; and
2. Roxville Associates would pay for all future deliveries of concrete to the project on a current basis.
Davino specifically testified that he never intended to pay more than $81,732 towards Smith's then arrears with County Concrete.[1] In accordance with Davino's agreement with Crimi, on June 28, 1990, Roxville issued check # 1203, drawn on its account with Chemical Bank, in the amount of $81,732 payable to Modular, Smith and County Concrete. The check was intended to be paid to County Concrete for monies owed it by Smith. In reliance on the expected arrival of the check, plaintiff resumed delivering concrete to Smith. However, this particular check never reached plaintiff. After being endorsed by Modular and then sent to Smith, someone then forged County Concrete's endorsement and deposited the check in the Smith account at National. Chemical paid the full amount of the check to National. At that time, Smith's account at National was overdrawn by $55,797.43. As a result, National retained that amount and deposited the remainder in the Smith account.
Upon discovery of the forgery, County Concrete demanded a replacement check from Roxville. Davino knew County Concrete had not received the intended money, although he did not then know that the check had been converted. So as to keep his promise to County Concrete, he issued a replacement check to County Concrete in the same amount, $81,732. Davino testified that he sent the second check with the understanding that it was a replacement for the first and if the first check eventually made its way to County Concrete, it would be used as a credit against future concrete deliveries purchased by Roxville, not against past due amounts. Thus, when asked during trial "[a]nd so, when you issued this second check, it wasn't your intention to pay a total of $160,000 toward the past due amounts, was it?," he answered "[n]o. I think that you got things out of context, but no, it was not my intent." It is undisputed that County Concrete received the second check.

II
The prior summary judgments had been granted by the motion judge as a result of her conclusions, from the discovery material submitted to her, that the second check was, indeed, intended to be a replacement check and that, since plaintiff received the promised $81,732 by way of the second check, it sustained no damages arising from the conversion of the first check. We did not necessarily disagree with this legal analysis, but concluded there were factual disputes as to the intended nature of the second check which should, in the first instance, be resolved by the jury.
And so, following four days of the trial on remand, the trial judge gave the following interrogatory:
Did Roxville Associates and County Concrete verbally agree that Roxville Associates would make one payment of $81,732 on account of the amounts past due from Gene Smith Contracting to County Concrete, or more, up to the entire amount that was past due?
The jury answered by finding that the agreement was for Roxville to make only one payment of $81,732 towards the arrears.
County Concrete made post-verdict applications to the court seeking a new trial or, in the alternative, a directed verdict on the *36 issues of absolute liability under N.J.S.A. 12A:3-419 and unjust enrichment. By order and written opinion entered February 20, 1997, the trial judge denied County Concrete's post-verdict motions and directed the parties to appear before the court and show cause as to why the monies retained by National to cover Smith's overdrawn account should not be returned to Roxville under a theory of unjust enrichment. The judge found that there was ample evidence to support the jury's conclusion that the second check was meant to replace the first and not to be further payment towards arrears owed to County Concrete by Smith. Based on the jury's finding, therefore, the trial judge held that the second check was in fact a replacement for the first check and, as a result, there was no cause of action for County Concrete under N.J.S.A. 12A:3-419(2), citing Nutt v. Chemical Bank, 231 N.J.Super. 57, 64 n. 4, 555 A.2d 8 (App.Div.1989). As to the issue of the $55,797.43 retained by National from the first check, County Concrete argued that it was entitled to those funds or, in the alternative, that it was entitled to payment of counsel fees and costs from Roxville under a theory of quantum meruit because Roxville was receiving a benefit from County Concrete's efforts. National and Chemical argued that County Concrete had no claim to any monies from the first check because it had received all that it was entitled to by way of the replacement check. The banks further asserted that Roxville had no right to the money because that entity had not filed a timely action to recover the funds. The trial judge rejected County Concrete's quantum meruit claim and ordered the banks to return to Roxville the monies retained from the forged check plus interest. National and Chemical appealed this determination. County Concrete cross-appealed the ruling on its post-verdict application as well as the conclusion that it was not entitled to the funds retained by National or to counsel fees. Thereafter, the banks settled with Roxville, leaving County Concrete the sole appellant.

III
Plaintiff raises the following issues on appeal:
POINT I. CHEMICAL BANK, THE DRAWEE BANK, MADE PAYMENT ON A CHECK BARING THE FORGED ENDORSEMENT OF PAYEE COUNTY CONCRETE AND IS THEREFORE LIABLE TO COUNTY CONCRETE FOR CONVERSION UNDER N.J.S.A. 12A:3-419(1)(c).
POINT II. THE PLAINTIFFS ARE ENTITLED TO A NEW TRIAL BECAUSE CONFINING THE JURY TO THE ISSUE OF CONTRACT PRINCIPLES OVER PLAINTIFF'S OBJECTIONS AS TO AN AGREEMENT BETWEEN SAL DAVINO AND JOHN CRIMI WAS REVERSIBLE ERROR.
POINT III. COUNTY CONCRETE SHOULD RECEIVE THE BENEFIT OF THE AMOUNTS DETERMINED TO BE UNJUST ENRICHMENT.
POINT IV. COUNTY CONCRETE HAS SUPERIOR RIGHT TO THE $55,797.43 RETAINED BY NATIONAL STATE BANK OUT OF THE PROCEEDS OF THE FORGED CHECK AND IS THEREFORE ENTITLED TO JUDGMENT.
POINT V. IN THE EVENT THAT PLAINTIFF DOES NOT PREVAIL IN THIS MATTER, THE PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES ON A QUANTUM MERUIT BASIS FROM ROXVILLE ASSOCIATES.
POINT VI. ROXVILLE ASSOCIATES IS NOT ENTITLED TO THE $55,797.43 BECAUSE IT HAS NO DIRECT CAUSE OF ACTION AGAINST ANY OF THE OTHER PARTIES.
POINT VII. THE JUDGMENT SHOULD BE REVERSED IN REGARD TO THE COURT'S OPINION THAT THIS WAS A REPLACEMENT CHECK.
We have considered these contentions in light of the entire record and applicable law. We are convinced points II through VII are entirely without merit and warrant no further opinion. R. 2:11-3(e)(1)(B), (C), (E). We address point I.

*37 IV
County Concrete asserted a cause of action against Chemical, National and Smith for conversion under N.J.S.A. 12A:3-419 which, at the time of the transaction at issue here, provided in pertinent part:
In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

[N.J.S.A. 12A:3-419(2).][2]
County Concrete contends that this section imposes absolute liability upon the drawee bank, against which there can be no defenses, credits or setoffs and that, therefore, it is entitled to judgment despite the jury verdict as to the nature of the second check.
The Uniform Commercial Code Comments to § 3-419(2), Comment 4, states:
Subsection (2) is new. It adopts the rule generally applied to the conversion of negotiable instruments, that the obligation of any party on the instrument is presumed, in the sense that the term is defined in this Act (Section 1-201), to be worth its face value. Evidence is admissible to show that for any reason such as insolvency or the existence of a defense the obligation is in fact worth less, or even that it is without value. In the case of the drawee, however, the presumption is replaced by a rule of absolute liability.

[Emphasis added.]
The question is, of course, to what does the notion of absolute liability apply? N.J.S.A. 12A:3-419(2) refers to the "measure of the drawee's liability." The Uniform Commercial Code Comments refer to "obligation on the instrument." The New Jersey Study Comment 4 states that § 3-419(2) is in accord with the common law liability of drawee banks, citing Board of Education of Jefferson Twp. v. National Union Bank of Dover, 121 N.J.L. 177, 1 A.2d 383 ( E. & A.1938).
In Board of Education of Jefferson Twp. v. National Union Bank of Dover, supra, an employee of the Board of Education had forged checks drawn on the Board's account at defendant bank. When the Board sued the bank for the amount of the converted checks, the bank asserted defenses of contributory negligence, estoppel and ratification. These defenses to the amount of the bank's obligation were rejected by the Court of Errors and Appeals and, thus, the bank was obligated to pay the payee the full amount of the check plus interest. But in so concluding, the court recognized that where such defenses do not exist "[g]enerally a bank is liable ... on a forged indorsement... unless the money has reached the intended person." Id. at 179, 1 A.2d 383 (emphasis added).
N.J.S.A. 12A:3-419(2) establishes the measure of liability of a drawee. Where a converted check is involved, that measure may also be the measure of appropriate damages. But § 3-419(2) does not expressly refer to the measure of damages. That is to say, for example, under that provision as it existed at the time of the conversion here the drawee banks could not have defended against the conversion by contending that the check was worthless because the maker was insolvent. But there is nothing in the language of the act, or the accompanying comments, that would preclude a drawee bank from claiming a credit against a defrauded payee's damages if the monies that the instrument was intended to transfer had been received by the payee.
Indeed, the express citation of Board of Education of Jefferson Twp. v. National Union Bank of Dover by the New Jersey Study Comment indicates that that rather basic concept under the prior common law was not intended to be discarded. We so observed in *38 Stella v. Dean Witter Reynolds, Inc., 241 N.J.Super. 55, 68, 574 A.2d 468 (App.Div.), certif. denied, 122 N.J. 418, 419, 585 A.2d 412 (1990). There, although we reversed for a new trial as to other defendants, we affirmed a jury verdict in favor of a drawee bank where the evidence was clear that monies from checks cashed with forged endorsements nonetheless reached the intended party. In doing so, we observed:
As the former Court of Errors and Appeals observed in Board of Educ., Tp. of Jefferson v. National Union Bank of Dover, 121 N.J.L. 177, 179-80, 1 A.2d 383 (E & A 1938), quoting 9 C.J.S. Banks and Banking, § 9356c at 734 (1938), "[g]enerally a bank is liable ... on a forged endorsement, in the absence of estoppel, contributory negligence, or ratification, or unless the money has reached the intended person." (Emphasis added.) If the funds obtained by the forgery reach the intended payee, the maker has suffered no injury and is not entitled to recover from the bank which paid on the forged endorsement, See Fulka, supra, 371 So.2d at 525 n. 7; Clemens v. First Nat'l Bank of Berryville, 286 Ark. 290, 692 S.W.2d 222, 225 (1985); Jones v. American Bank and Trust Company, 387 So.2d 1360 (La.Ct. App.1980); Blomquist v. Zions First Nat'l Bank, N.A., 18 Utah 2d 65, 415 P.2d 213 (1966); Sundail Const. Co. v. Liberty Bank of Buffalo, 277 N.Y. 137, 142, 13 N.E.2d 745, 747 (1938). In the present case, the funds paid on the forged endorsements were transmitted to Murray, where Sykes wanted them to go. He suffered no injury as the result of the Bank's action in paying on the forged endorsements. His injury was the result of his entrusting the funds to Murray and not the result of the manner in which they were transmitted.

[Id. at 68, 574 A.2d 468.]
And see Nutt v. Chemical Bank, supra, 231 N.J.Super. at 64 n. 4, 555 A.2d 8 ("[N.J.S.A. 12A:3-419(2) ] cannot mandate [full recovery] in all cases. For example, if the payee had been fully or partially paid by a repentant forger, it would make no sense to require a second full payment by the drawee or its indemnitor, because the drawee or indemnitor failed to dishonor the check based upon the forged endorsement .... the requirement of [damages] by the drawee of the full amount should be conditioned upon proof that the payee had not received all or part of the funds from either the forger or other person...."); 4 Hawkland and Lawrence, Uniform Commercial Code Series § 3-419:10 (4th ed. 1994 & Supp.1998) ("[d]enying the drawee the right to introduce evidence that the value of the instrument is less than its face value makes sense where the instrument is paid on a forged endorsement. In [such] case, the drawee has paid money [otherwise] owed to the true owner in the face amount of the instrument. The drawee should therefore only be permitted to prove that the owner actually received the proceeds from the forger or from the payment itself."). See also 2 James J. White and Robert S. Summers, Uniform Commercial Code § 18-6 at 230-31 (3rd ed. 1988 & Supp.1998). And in 6A Ronald A. Anderson, Uniform Commercial Code § 3-419:161 (3rd ed.1998), it is stated "[t]he fact that UCC § 3-419(2) states that the plaintiff recovers the face amount of the instrument does not prohibit the reduction of that amount by a setoff which is otherwise proper."
Plaintiff relies on a number of out-of-state cases. Smith v. General Casualty Co. of Wisconsin, 75 Ill.App.3d 971, 31 Ill.Dec. 602, 394 N.E.2d 804, 807 (1979) (where the check converted by drawee was payable to plaintiff and attorney and attorney forged and converted funds, court found § 3-419(2) precluded reduction of award to plaintiff by amount plaintiff received as reimbursement from Client's Security Fund of Illinois Bar); E.S.P., Inc. v. Midway Nat. Bank of St. Paul, 466 N.W.2d 417, 419-20 (Minn.Ct.App. 1991) (drawee bank that had made full payment to one payee was still liable to co-payee for full face value of converted check); Stapleton v. First Security Bank, 207 Mont. 248, 675 P.2d 83, 87 (1983) (plaintiff co-payee's loss on a converted instrument was limited to her actual monetary interest in the proceeds); and Tette v. Marine Midland Bank, 78 A.D.2d 383, 435 N.Y.S.2d 413, 416 (N.Y.App.Div.), appeal dismissed by, 54 N.Y.2d 681 (1981) (noting the inconsistent treatment of drawees and other parties under *39 § 3-419(2), however, stating that changing the law is for the Legislature).
Aside from Smith, none of these cases involve a situation in which the true owner of the converted check actually received the monies intended, thus eliminating or reducing any loss. And in Smith, the "reimbursement" was not from the original payor, the drawee or the forger. See Lurz v. Panek, 172 Ill.App.3d 915, 123 Ill.Dec. 200, 527 N.E.2d 663, 671-72 (1988) (limiting plaintiff payee's recovery against drawee bank on converted check to the face amount of the check but offset by monies ultimately received from the defrauding defendant co-payee, distinguishing Smith on the grounds that the reimbursement that was not offset in Smith was from a collateral source, and observing "[t]o award plaintiff [in Lurz ] damages in the full amount of the check would result in an unwarranted windfall." Id. at 672.). Accord Midwest Indus. Funding, Div. of Rivera Lend Lease, Inc. v. First Nat. Bank of Lockport, 973 F.2d 534, 538 (7th Cir.1992).
Moreover, in Stapleton v. First Security Bank, supra, 675 P.2d at 87, though acknowledging the "absolute liability" aspect of § 3-419(2), nonetheless the Montana court held that the plaintiff co-payee's loss on a converted check was limited to her actual monetary interest in the proceeds, observing that otherwise "wherever there are joint payees, each could recover the face amount of a check, requiring a drawee bank to pay two times the amount of the checks, or more. We do not conclude that the statute requires recovery without regard to the joint payee's actual interest in the check." Ibid. There, two checks had been made payable to plaintiff and her former husband. The defendant bank paid the checks to plaintiff's former husband without receiving plaintiff's endorsement. Recognizing that plaintiff's interest in the checks might be a joint tenancy interest, the Montana court remanded the judgment in favor of plaintiff in the full amount of the converted checks to determine her actual interest. On remand, the district court again awarded judgment to the plaintiff in the full amount of the checks, concluding the evidence presented on remand established that her interest was not that of a joint-tenant and that, therefore, she had an interest in the full amount of the checks. This conclusion was affirmed. Stapleton v. First Security Bank, 219 Mont. 323, 711 P.2d 1364, 1366 (1985).
Finally, we question plaintiff's reliance upon Tette v. Marine Midland Bank, supra, 78 A.D.2d 383, 435 N.Y.S.2d 413. There, the court held that defendant depository bank was not liable to plaintiff payee for the face amount of a converted check where the payee could not establish any legal right to the proceeds, observing that under § 3-419(2), the liability for other than a drawee bank is only "presumed" to be the face amount of the check. In dicta, the court thought there might be "apparent inconsistency" between the liability of depository banks and drawee banks under § 3-419, but considered that to be a matter for the Legislature. Id. at 416. But we do not read Tette as holding that where a payee has, nonetheless, received all or part of the monies intended on the converted check the drawee bank must, nonetheless, respond in damages for the full amount of the check. Indeed, in Lund v. Chemical Bank, 797 F.Supp. 259, 272-73 (S.D.N.Y. 1992), the federal district court, applying New York law, rejected application of the absolute liability provision of § 3-419(2) to preclude a drawee bank from asserting a "receipt of the proceeds" defense. In that case, one of the co-payees of the converted instrument had been fully reimbursed by the wrongdoer in a later transaction. The court concluded that allowing him, nonetheless, to recover from the drawee would result in unjust enrichment. Id. at 272. In so holding, the court cited the general rule that "[w]here the proceeds of a forged check reach the intended payee, there can ... be no cause of action by anyone on the forged instrument." Ibid. (citation omitted). To read § 3-419(2) to impose liability on a drawee in such a case, the court opined, would "abrogate settled commercial law" and ignore the accepted rule that the UCC "does not override common law principles not within its term." Id. at 272-73. See also Lund's Inc. v. Chemical Bank, 870 F.2d 840, 853 (2nd Cir.1989) (remanding to the district court the issue ultimately decided in Lund v. Chemical *40 Bank, supra, 797 F.Supp. at 272-73, observing "[s]ince we have found no New York authority imposing strict liability upon a drawee to a co-endorsee or copayee for the face amount of a check despite a showing by the drawee that the copayee was not entitled thereto, we believe that it would be appropriate upon remand to allow [the drawee bank] to make any such showing of which it is capable before ruling definitively on the issue."). Accord Mouradian v. Astoria Federal Sav. & Loan, 91 N.Y.2d 124, 667 N.Y.S.2d 340, 689 N.E.2d 1385, 1387 (N.Y.1997) (while holding that § 3-419(2)'s "rule of absolute liability" prevented drawee bank from offsetting its liability for a check converted by plaintiff copayee's estranged husband by proving that she had, despite not having received any or all of the monies nor having any control over or input into the use of the monies, nonetheless benefitted by her husband's receipt of the monies, the court recognized that § 3-419(2) does not "preclude a set-off where the payee has received all or part of the proceeds of a converted instrument.").
The resolution of the issue before us is aided by focusing upon its narrow parameters. It is simply whether a drawee bank under N.J.S.A. 12A:3-419(2) must reimburse a payee or the true owner of a converted instrument the full amount of that instrument even where the payee or true owner has otherwise received all or part of the monies that the instrument was intended to transfer. We are convinced that as to this narrow issue the weight of the authority is that such drawee bank is entitled to offset the amount of the monies actually received by the payee or true owner, as we so indicated in Stella v. Dean Witter Reynolds, Inc., supra, 241 N.J.Super. at 68, 574 A.2d 468. See Starkey Construction, Inc. v. Elcon, Inc., 248 Ark. 958, 457 S.W.2d 509, 513 (Ark.1970) ("[w]e cannot believe that it was the intent of the General Assembly to hold a drawee ... liable where the money actually reached the parties intended by the drawer of the check."); White County Bank v. Noland Co., 214 Ga.App. 780, 449 S.E.2d 325, 327-28 (Ga.Ct.App.1994) (rejecting absolute liability of drawee under § 3-419(2) where payee, who suffered no damages, would be unjustly enriched); Trans-American Steel Corp. v. Federal Ins. Co., 535 F.Supp. 1185, 1190 (N.D.Ga.1982) (in refusing to allow judgment against drawee bank where payee was paid amounts due under instrument by forger, court stated "[w]hether this payment is viewed as restitution ... or a flow-through of the proceeds to the intended payee, it was sufficient to reduce [the drawee's] liability to zero"); Twellman v. Lindell Trust Co., 534 S.W.2d 83, 96 (Mo.Ct.App.1976) (concluding § 3-419(2) was not intended to prohibit a drawee from proving that the payee had already been paid and stating "[w]e do not believe that the statute should be read so narrowly as to prevent a set-off in the amount already recovered by plaintiff.") See also Hoppe v. First Midwest Bank of Poplar Bluff, 899 S.W.2d 879, 882-83 (Mo.Ct.App. 1995) (noting the general principle that where the payee actually received the money intended, the drawee bank is entitled to a setoff therefor, but finding on the particular facts that no such setoff was warranted); Middle States Leasing Corp. v. Manufacturers Hanover Trust Co., 62 A.D.2d 273, 404 N.Y.S.2d 846, 849 (N.Y.App.Div.1978) (noting the general principle, but considering its inapplicability on the facts).
Here, since plaintiff received the monies that the converted check was intended to transfer to it, it is entitled to no more from defendant banks.
Affirmed.
NOTES
[1] This was disputed by Crimi during the trial. According to him, when he and Davino discussed the situation, he was owed over $160,000 by Smith. He claimed Davino agreed to pay the entire amount of the arrears, only part of which was paid by the first check. It was his testimony that the second check was part of the agreement and separate from the first. The jury obviously did not believe him.
[2] Effective June 1, 1995, chapters 3 and 4 of the Uniform Commercial Code were substantially revised. N.J.S.A. 12A:3-419(2) was replaced by N.J.S.A. 12A:3-420 which removes the "absolute liability" language in 12A:3-419(2) by providing that the measure of liability is "presumed" to be the amount payable and that recovery cannot exceed "plaintiff's interest" in the instrument. Given our conclusion here that N.J.S.A. 12A:3-419(2) as it existed at the time of the conversion does not preclude consideration of the replacement check as a setoff, we need not deal with the issue of retroactivity.