94 N.J. Super. 293 (1967)
228 A.2d 88
JAMES J. MURNER, JR., SUBSTITUTED TRUSTEE OF THE ESTATE OF CHARLES NAZZARO, DECEASED, PLAINTIFF-APPELLANT,
v.
FIRST NATIONAL BANK OF PASSAIC COUNTY, DEFENDANT-RESPONDENT.
JAMES J. MURNER, JR., SUBSTITUTED TRUSTEE OF THE ESTATE OF CHARLES NAZZARO, DECEASED, PLAINTIFF-APPELLANT,
v.
FAIRLAWN-RADBURN TRUST COMPANY, DEFENDANT-RESPONDENT.
JAMES J. MURNER, JR., SUBSTITUTED TRUSTEE OF THE ESTATE OF CHARLES NAZZARO, DECEASED, PLAINTIFF-APPELLANT,
v.
PROSPECT PARK NATIONAL BANK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1967.
Decided March 27, 1967.
*294 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Herbert C. Klein argued the cause for appellant (Messrs. Krieger & Klein, attorneys; Mr. Philip S. Epstein, on the brief).
Mr. Frank J. Davies, Jr. argued the cause for respondent First National Bank of Passaic County (Messrs. Davies & Davies, attorneys).
*295 Mr. Brian J. McGrievy argued the cause for respondent Fairlawn-Radburn Trust Company (Messrs. Evans, Hand, Evans, Allabough & Amoresano, attorneys).
Respondent Prospect Park National Bank filed no brief.
PER CURIAM.
Plaintiff, substituted trustee of a testamentary trust created under the will of Charles Nazzaro, deceased, appeals from summary judgments entered in favor of the three defendant banks in suits to recover money allegedly misappropriated from the trust estate by Walter Nazzaro, the original trustee. The claims against the banks are based on the following facts.
In 1956 Walter Nazzaro opened trust accounts in the banks in the name of "Walter Nazzaro Trustee of the Estate of Charles Nazzaro." Until 1959 he deposited in these accounts stock dividends, mortgage payments and rents from estate property. In 1959 he began a series of misappropriations of trust funds totalling $15,409.86.
The complaint in Murner v. First National Bank of Passaic County et al. (Docket L-23413-62) alleges in its first five counts that checks aggregating $6,255.28 and payable to the order of the estate, were cashed over the bank counter. The sixth and seventh counts charge that checks totalling $1,151.34, to the order of the estate, were credited to Nazzaro's personal account. The eighth count alleges that First National had cashed $15,000 in three checks drawn on the estate account and payable to the order of Walter Nazzaro, but improperly signed with only his signature rather than "Estate of Charles Nazzaro by Walter Nazzaro, Trustee." The ninth count refers to the same checks as the eighth and charges the bank with honoring them with actual or constructive knowledge of Nazzaro's lack of authority to draw them. The remaining counts involve defendants no longer in the case by reason of stipulations of dismissal filed by plaintiff.
*296 The second complaint, against Fairlawn-Radburn Trust Company et al. (Docket L-11130-63), in its first four counts charges that the bank cashed checks totalling $8,952.10 and payable to the order of the estate. The fifth count alleges that the bank cashed these checks with actual knowledge of Nazzaro's breach of his fiduciary obligation, or with knowledge of such facts that its action in taking such checks amounted to bad faith. The other counts involve defendants who are no longer in the case.
The third complaint, filed in the county district court against Prospect Park National Bank et al., in its first count charges the bank with cashing a $201.88 check drawn against the trust account and payable to Nazzaro. The second count alleges that the bank cashed a $227.34 check payable to the order of the estate. The third count states that a $211 check, payable to the order of the estate, was presented to the bank for deposit to the estate account, but the proceeds were not so deposited and "were in fact paid over to persons other than the estate or deposited to accounts of persons other than the estate." The fourth count alleges that the bank had actual knowledge of such facts that its action in dealing with the checks amounted to bad faith. The remaining counts concern defendants no longer involved in the suit.
The action against the Prospect Park National Bank was consolidated in the Law Division with that against First National Bank of Passaic County. In addition, although the action against Fairlawn-Radburn Trust Company was unconsolidated, the motions for summary judgment by all three defendants were informally consolidated, jointly heard and granted.
The trial judge had before him the complaints and answers in the respective actions, the depositions which plaintiff had taken of various bank employees, and affidavits. In his oral determination he observed that there was no contention that any of the banks had actual knowledge of a breach of trust on Nazzaro's part, and this is conceded. The controversy, he said, revolved around the question of whether *297 any bank had knowledge of such facts that its action in taking the instruments in question amounted to bad faith. In his view, all that plaintiff had raised was at best a suspicion; to permit the case to go to the jury would merely invite speculation on its part. Although mindful of the fact that a motion for summary judgment should be granted with caution, especially where a matter such as bad faith is involved, he was of the opinion that there was nothing in the case from which a jury could legitimately conclude that there was bad faith on the part of any of the banks. He therefore granted the motions for summary judgment. We agree with that conclusion.
In Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), the court said that if the party opposing the summary judgment motion offers "only facts which are immaterial or of an insubstantial nature, a mere scintilla, * * * fanciful, frivolous, gauzy or merely suspicious," he should not be heard to complain if the court grants summary judgment, "taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact." Of course, allegations made in the pleadings, standing alone, may not raise such an issue. The court further said that the summary judgment procedure "pierces the allegations of the pleadings to show that the facts are otherwise than as alleged." (at page 75)
The provisions of the Uniform Fiduciaries Act, N.J.S. 3A:41-4, 6, 7 and 9, clearly support the result reached in the Law Division. These sections of the act state that a bank is not chargeable with notice that the fiduciary is committing a breach of his obligation unless it takes the instrument with actual knowledge of such breach or with knowledge of such facts that its action amounts to bad faith. None of the banks had actual knowledge of Nazzaro's breach of fiduciary duty. Plaintiff tried to develop the "bad faith" element mentioned in the cited sections of the Uniform Fiduciaries Act by taking extensive depositions of all the tellers who handled the *298 checks. Despite counsel's rigorous examination, there is nothing in the depositions to show knowledge of such facts on the part of any of the three banks as amounted to bad faith. There is also the affidavit of Walter Nazzaro, the trustee himself  an affidavit whose allegations were not controverted  that all of the check transactions were handled by the banks in good faith, without any knowledge on their part as to how he was dealing with the estate funds. Nazzaro alleged that he believed he was dealing with the funds in a proper manner; he knew he had authority to buy and sell securities and make distribution to life tenants (he himself was a one-third life beneficiary), and the mechanics of how he did so was, in his opinion, his concern only. At no time, he said, did he tell any of the banks of the disposition he was making of the funds, or discuss with any bank officer or employee the handling of the estate funds. In short, he alleged that there was no actual knowledge, collusion or bad faith on the part of any of the three banks.
In our view, the resolution of the three actions is governed by the provisions of the Uniform Fiduciaries Act, above. What was said in New Amsterdam Casualty Co. v. National Newark & Essex Banking Co., 117 N.J. Eq. 264 (Ch. 1934), affirmed p.c., 119 N.J. Eq. 540 (E. & A. 1936), is entirely persuasive and determinative of this case.
Plaintiff seeks to analogize the present situation to that where a bank cashes checks made payable to a corporation, citing Singer Sewing Machine Co. v. Citizens National Bank & Trust Co. of Englewood, 111 N.J.L. 199 (Sup. Ct. 1933), affirmed o.b., 112 N.J.L. 497 (E. & A. 1934). We do not consider the analogy valid. Compare O'Connor v. First National Bank & Trust Co., 12 N.J. Super. 281 (App. Div. 1951), where the bank accepted for deposit to the personal account of a corporate officer a check payable to the corporation and which had been endorsed by the officer and deposited. The bank had on file a corporate resolution authorizing certain officers to deal with transactions normally incident to the corporate business. The bank was held not liable, and the *299 court distinguished the Singer Sewing Machine case and other cases on which plaintiff here depends. We have a similar situation here, where the banks had a signature card authorizing them to recognize Nazzaro's signature.
Plaintiff claims that the First National Bank of Passaic County improperly honored three checks totalling $15,000 drawn on the estate account but bearing only the signature of Walter Nazzaro. However, each of the checks bore the printed or typed words, "Walter Nazzaro Trustee of the Estate of Charles Nazzaro," as well as the correct account number. We therefore find no merit in plaintiff's claim.
The judgment is affirmed.