752 A.2d 332 (2000)
331 N.J. Super. 416
William LEEDS and Carol Leeds, Plaintiffs-Appellants,
v.
CHASE MANHATTAN BANK, N.A. and Summit Bank Corp., as successor-in-interest to United Jersey Bank, Defendant-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1999.
Decided June 1, 2000.
*333 Diane C. Nardone, Newark, for plaintiffs-appellants (Jemas & Nardone, attorneys; Elise P. Rossbach on the brief).
Marguerite M. Schaffer, for defendantsrespondents (Shain, Schaffer & Rafanello, attorneys; Ms. Schaffer, of counsel and Owen J. Lipnick on the brief).
Before Judges BAIME,[1] EICHEN and WECKER.
*334 The opinion of the court was delivered by WECKER, J.A.D.
Plaintiffs William Leeds and Carol Leeds, a mother and son, (collectively "plaintiff" or "Leeds"), hired Louis Egnasko, Esq.[2] to represent them in connection with a mortgage foreclosure action, as well as the purchase and resale of the property in East Orange, New Jersey on which they held the mortgage. After plaintiff bought the property at the foreclosure sale, they entered into a contract to sell the property. Egnasko closed the sale and accepted a settlement check for $87,293.56 on plaintiff's behalf. The settlement check payable to William Leeds, Carol Leeds, and Isabel Gibbs,[3] was a United Jersey Bank teller's check drawn at that bank's Hackensack, New Jersey branch. Summit Bank is the successor-in-interest to United Jersey Bank (hereinafter "Summit").
Following the closing, and unknown to Leeds, Egnasko altered the settlement check by typing "* * *Louis Egnasko, as attorney for* * *" above the payee line, so that the check then read:
* * *LOUIS EGNASKO AS ATTORNEY FOR* * *
* * *WILLIAM LEEDS, CAROL LEEDS, ISABEL GIBBS* * *
Egnasko alone endorsed the check "for deposit only, XXXXXXXXX" and deposited the check into his attorney trust account at Chemical Bank. Chemical Bank stamped the back of the check "Endorsement guaranteed." Defendant Chase Manhattan Bank is the successor-in-interest to Chemical Bank (hereinafter "Chase"). Chase presented the check for collection in the ordinary course, and Summit honored its own teller's check. The check was negotiated between May 8 and May 16, 1996.
On June 6, 1996, Egnasko drew a check for $92,050 payable to William and Carol Leeds from an attorney trust account he held at the Trust Company of New Jersey (Trustco). This check apparently covered the proceeds of the sale of the home. Trustco honored the check drawn to Leeds, and Leeds received payment on that check. However, Egnasko's Trustco account also contained funds that Egnasko had obtained by similarly altering and depositing a check payable to Shrewsbury State Bank ("Shrewsbury"), which was intended to pay off a mortgage loan in an unrelated real estate transaction. Instead of delivering that check to Shrewsbury, Egnasko again inserted his own name, "Louis Egnasko as attorney," above the payee's name and deposited the check into his Trustco attorney trust account. Egnasko thus used funds that belonged to Shrewsbury to pay Leeds.
Facing a claim for conversion by Shrewsbury, Trustco filed suit against Egnasko and Leeds in New York, seeking repayment of monies traceable to Egnasko's fraud.[4] Leeds filed an answer and crossclaim in the New York action on December 5, 1997, admitting receipt of the Trustco check from Egnasko, but denying that "William and Carol Leeds owe [Trustco] the traceable converted proceeds of the check delivered to William Leeds with interest...."
On December 24, 1997, Leeds filed this action alleging strict liability for payment *335 on the altered settlement check against both Chase, the depository bank, and Summit, the drawer/drawee/payor bank.[5] In support of their motion for summary judgment, defendants argued that (1) Leeds had been paid and therefore suffered no damages; (2) Leeds would only be ordered to return that payment in the Trustco action if Leeds were found to have accepted payment with knowledge that the funds were stolen; and (3) if Leeds knowingly accepted stolen monies, the equitable doctrine of unclean hands would bar recovery against the banks. Although defendants' answer included among its separate defenses the Uniform Fiduciaries Law, N.J.S.A. 3B:14-52 to -61 (the UFL), defendants did not argue the UFL defense in support of their summary judgment motion or in opposition to Leeds' cross-motion for partial summary judgment.
Leeds argued in opposition to summary judgment and in support of his cross-motion that Chase, as the depository bank, is strictly liable for conversion under N.J.S.A. 12A:3-420, including damages related to the cost of defending the New York suit. The motion judge granted summary judgment in favor of both Chase and Summit dismissing plaintiff's complaint. The order for summary judgment merely states that "plaintiffs have not and may not in the future suffer damages at defendant's hands," and the order denying plaintiff's motion for partial summary judgment simply says "denied." The absence of findings of fact and conclusions of law to explain these orders is contrary to R. 1:7-4 and R. 2:5-1(b). See, e.g., Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980); Schwarz v. Schwarz, 328 N.J.Super. 275, 282, 745 A.2d 592 (App.Div.2000). In the interest of justice, and given the passage of time, we nevertheless resolve the legal issues properly raised by this appeal.
On appeal, both parties reiterate their arguments in the Law Division. After careful review of the record, the briefs, and the arguments of counsel, we conclude that summary judgment was erroneously granted to defendant Chase, and partial summary judgment against Chase on liability was erroneously denied to plaintiff. As we shall explain below, we also conclude that defendant Summit is entitled to summary judgment, although for a reason different from that stated in the order appealed from. See Hughes v. Eisner, 8 N.J. 228, 229, 84 A.2d 626 (1951) (we affirm or reverse judgments, and not reasons).
We first address Leeds' cause of action in conversion against Chase. The applicable provision of the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-420a, states[6]:
The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

[Emphasis added.]
*336 Although the check was not actually delivered to Leeds, it was delivered to Egnasko as Leeds' attorney, with intent that title be transferred to Leeds, the payee. Thus Leeds is entitled to bring this action for conversion as one who "receive[d] delivery of the instrument ... through delivery to an agent ...." N.J.S.A. 12A:3-420a. See Interchange State Bank v. Veglia, 286 N.J.Super. 164, 184-87, 668 A.2d 465 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996) (finding standing by virtue of constructive delivery under the prior law, N.J.S.A. 12A:3-419); Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J.Super. 170, 174, 434 A.2d 618 (App.Div.1981). It is undisputed that Egnasko was not authorized by Leeds to indorse the check and had no right to receive or enforce payment on that check.
Section 3-420a does not explicitly refer to "forgery" or "alteration," but instead addresses a class of persons who are "not entitled to enforce the instrument or receive payment." However, there can be no question that because the Summit teller's check payable to Leeds was altered by Egnasko, he was not "entitled" to payment on the instrument. Such an alteration constitutes a forgery under the Code and the common law. See N.J.S.A. 12A:3-407a; Teas v. Third Nat'l Bank & Trust Co., 125 N.J. Eq. 224, 227-28, 4 A.2d 64 (E. & A.1939) ("There is no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the same in so far as concerns the passing of title."); see also Nutt v. The Chemical Bank, 231 N.J.Super. 57, 62-63, 555 A.2d 8 (App.Div.1989); Humberto Decorators, 180 N.J.Super. at 174, 434 A.2d 618. By crediting Egnasko's trust account with the face amount of the check, Chase paid the check to "a person not entitled to... receive payment." N.J.S.A. 12A:3-420a.
As a depository bank under the Uniform Commercial Code, see N.J.S.A. 12A:4-105b, Chase is strictly liable for conversion on a forged or stolen instrument. See N.J.S.A. 12A:3-420, comment 1; New Jersey Lawyers' Fund for Client Protection v. First Fidelity Bank, N.A., 303 N.J.Super. 208, 226-27, 696 A.2d 728 (App.Div.1997)(finding liability under both the 1995 enactment of § 3-420 and the predecessor § 3-419); Nutt v. Chemical Bank, 231 N.J.Super. at 62, 555 A.2d 8 (under the predecessor § 3-419). Indeed, the 1995 revision of § 3-420 eliminated the defense that had been provided by former § 3-419(3) for a depository bank that acted "in good faith and in accordance with the reasonable commercial standards applicable to the business ...." See New Jersey Lawyers' Fund, 303 N.J.Super. at 228, 696 A.2d 728 ("Even if [the bank] was commercially reasonable when it accepted the forged checks in this case, [it] is still strictly liable for conversion for paying on forged indorsements."); see also Uniform Commercial Code, comment 3 to N.J.S.A. 12A:3-420. Therefore, Chase is strictly liable on Leeds' claim for conversion under N.J.S.A. 12A:3-420a, because Chase "[made or obtained] payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." See New Jersey Lawyers' Fund, 303 N.J.Super. at 224, 696 A.2d 728.
The justification for strict liability upon the depository bank is that "the loss should normally come to rest upon the first solvent party in the stream after the one who forged the indorsement ...." 2 James J. White & Robert S. Summers, Uniform Commercial Code § 18-4 at 209-10 (4th ed.1995). See also Uniform Commercial Code, comment 3 to N.J.S.A. 12A:3-420:
The depositary bank is ultimately liable in the case of a forged indorsement check because of its warranty to the payor bank under Section 4-208(a)(1) and it is usually the most convenient defendant in cases involving multiple checks drawn on different banks. There is no basis for requiring the owner of the check to bring multiple actions against *337 the various payor banks and to require those banks to assert warranty rights against the depositary bank.
We are therefore convinced that the motion court improperly entered summary judgment against Leeds and in favor of Chase. We are also convinced that Chase is not entitled to summary judgment based upon the defense of payment, in light of Leeds' continuing exposure to the New York action, until that action has been resolved. If Leeds is not required in that action to disgorge the payment received from Egnasko, Chase will be entitled to set off that payment against its liability for conversion. Cf. County Concrete Corp. v. Smith, 317 N.J.Super. 50, 61-62, 721 A.2d 34 (App.Div.1998).[7] Leeds cannot be allowed a double recovery. If Leeds is required to disgorge, we will then address Chase's "unclean hands" defense on a complete record. That Leeds' damage claim may be limited (or even dismissed) in the future does not affect our determination of Chase's liability here and now.
We next address Leeds' cause of action in conversion against Summit. Summit is the drawer, the drawee, and the payor bank on the altered check under the Code definitions. A drawee bank is also strictly liable for conversion when it pays on a forged endorsement. County Concrete, 317 N.J.Super. at 56, 721 A.2d 34 (under former N.J.S.A. 12A:3-419(2)); Mandelbaum v. P & D Printing Corp., 279 N.J.Super. 427, 432, 652 A.2d 1266 (App. Div.1995). In Gast v. American Cas. Co. of Reading, Pa., 99 N.J.Super. 538, 541, 240 A.2d 682 (1968), we said:
As both drawer and drawee defendant had the responsibility to make payment to the named payees on the instrument.... The statute [the former N.J.S.A. 12A:3-419] created an absolute right to recover in favor of plaintiffs ... upon proof that the draft was paid on the forged indorsements. Plaintiffs' indorsements were concededly forged. It follows that defendant, having paid the draft, was rendered liable for the conversion in the face amount.
However, N.J.S.A. 12A:3-420c limits damages for conversion against
[a] representative, other than a depository bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument ... [for any more than] the amount of any proceeds that it has not paid out.
Summit is not a depositary bank in this case. Summit has paid out the entire face amount of the forged check and is not alleged to have acted other than in good faith; it therefore cannot be liable to Leeds for conversion under § 3-420. Whether Summit could have been found liable for negligence, as a result of its failure to detect the alteration on its own teller's check, is not before us. Plaintiff has not pled or argued a negligence cause of action against Summit. Summary judgment is therefore affirmed in favor of Summit.
Finally, we address defendants' contention that the banks are protected by the Uniform Fiduciaries Law, N.J.S.A. 3B:14-52 to -61 (the UFL).[8] Defendants' reliance upon the protection of N.J.S.A. 3B:14-58 is misplaced. That section provides:
a. If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks drawn by him upon an account in the *338 name of his principal, if he is empowered to draw thereon, or, except as provided in subsection b. of this section, if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving the deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary. The bank is authorized to pay the amount of the deposit of [sic] any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making the deposit or in drawing the check, or with knowledge of facts that its action in receiving the deposit of paying the check amounts to bad faith.
b. In the case of an instrument payable to the principal or the fiduciary as fiduciary, the bank has notice of the breach of fiduciary duty if the instrument is deposited to an account other than an account of the fiduciary, as fiduciary, or an account of the principal.

[Emphasis added.]
With respect to Summit, where Egnasko never maintained an account or deposited the check, § 58 does not apply by its terms.
Section 58 also does not apply with respect to Chase. Egnasko did not draw the check he deposited with Chase, and the funds he deposited were not "held by him as fiduciary" because he altered the check to add his name as payee.
The UFL protects a bank from responsibility for monitoring a fiduciary's disposition of funds in its fiduciary account so long as the bank does not have "knowledge of facts that its action in receiving the deposit or paying the check amounts to bad faith." N.J.S.A. 3B:14-58(a). The bank is liable only if it has acted in bad faith or with actual knowledge of the fiduciary's defalcation. See New Jersey Title Ins. Co. v. Caputo, 163 N.J. 143, 155-56, 748 A.2d 507 (2000); New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J. Eq. 264, 270-71, 175 A. 609 (N.J.Ch.1934), aff'd o.b., 119 N.J. Eq. 540, 182 A. 824 (E. & A.1936). The UFL does not insulate the bank from liability under the UCC just because the depositor or endorser also happens to be a fiduciary. See Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162 (Law Div.1968), aff'd o.b., 105 N.J.Super. 164, 251 A.2d 460 (App.Div.1969).
In Salsman, an attorney persuaded his client that a check payable to her as the sole beneficiary of her deceased husband's profit-sharing plan belonged to his estate. The attorney had the client sign a restrictive indorsement to the estate, and then altered the indorsement for deposit to himself as "trustee." The proceeds were accepted for deposit to the attorney's trust account. After finding the depository bank liable under several sections of the UCC, the Law Division Judge explained his rejection of the bank's separate defense under the UFL:
To exonerate the bank it must be shown that [the attorney] came into possession of the funds as a fiduciary .... Since [he] had no right to the funds, was not a fiduciary of the [payee] and was not authorized to indorse checks on behalf of the [payee], the bank cannot claim the protection of this statute.
[102 N.J.Super. at 495[, 246 A.2d 162].]
Cf. Standard Acc. Ins. Co. v. Pellecchia, 15 N.J. 162, 177, 104 A.2d 288 (1954) ("[T]here is nothing in [the predecessor to § 58] that in any way relieves a bank from its guaranty of prior endorsements.").
Chase's liability to Leeds is not for the bank's failure to inquire into Egnasko's "breach of his obligation as a fiduciary." It is for accepting a forged/altered check for deposit, irrespective of the circumstance that the forger was also a fiduciary with respect to his clients and the owners of funds in his attorney trust account.
*339 Chase cannot avail itself of the protection of § 58, because Chase's liability here arises out of its payment on an altered checkconversion as defined by the UCCand not out of Egnasko's subsequent disposition of the proceeds of that check.
Defendants' proposed application of the UFL implicitly treats the altered check as if it were properly payable to and indorsed by Egnasko as fiduciary for Leeds, thereby ignoring N.J.S.A. 12A:3-420. If we were to accept the argument that the shield of the UFL supercedes the liability imposed by § 3-420, the result would be to allow a dishonest fiduciary, indeed a forger, to insulate his bank from liability not just for his misapplication of funds entrusted to him as a fiduciary, but also for conversion of funds not entrusted, funds obtained by his forgeries, for which the bank would otherwise be strictly liable. We see no policy reason for accepting such a broad interpretation of the UFL, and every public policy reason for rejecting it.
Defendant's supplemental brief addressing the UFL defense ignores Chase's affirmative liability under the UCC. Each of the cases on which defendants rely to support the UFL defense involves a common law claim of misappropriation,[9] breach of contract,[10] embezzlement[11] or common law conversion[12] of funds in a fiduciary account, based upon the fiduciary's improper disposition of those funds. These cases involve a plaintiff's attempt to recover against the bank where the dishonest fiduciary has diverted funds from a fiduciary account to his own personal account or creditor, and therefore require a showing of the bank's bad faith or actual knowledge of a fiduciary's defalcation. These cases do not implicate the issue before us: liability for conversion under the UCC as a result of accepting an altered check. Indeed, Strong v. City Nat'l Bank of Phila., 355 Pa. 390, 50 A.2d 323 (1947), also relied upon by defendants, actually supports the outcome we reach. There the Pennsylvania Supreme Court said that if the attorney who endorsed and deposited checks payable to an estate had not been authorized to do so by the administratrix's written power of attorney, "the bank that accepted the checks for deposit to the attorney's personal account and paid out on his personal checks to others" clearly would have been liable for paying out funds on the basis of an unauthorized indorsement of the payee's name. 50 A.2d at 325.
Defendants' attempt to distinguish Teas, 125 N.J. Eq. 224, 4 A.2d 64, and Salsman, 102 N.J.Super. 482, 246 A.2d 162, is unavailing, as is defendants' reliance on an ethics opinion permitting attorneys to obtain written authorizations to indorse and deposit checks payable to the client. See Matter of Advisory Comm. on Prof'l Ethics, No. 22-95, 144 N.J. 590, 677 A.2d 1100 (1996). Leeds gave no such authority to Egnasko.
Chase cannot invoke the UFL, and Leeds need not prove that either bank acted in "bad faith" as defined by Justice Long in Caputo, 163 N.J. at 155-56, 748 A.2d 507.
Finally, we note that the UFL explicitly contemplates that
[i]n any case not provided for in this article, the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, commercial transactions and banking, shall continue to apply.

[N.J.S.A. 3B:14-60.]
*340 The facts before us are "not provided for" by the UFL, and Leeds' claim against Chase is governed by the Uniform Commercial Code, including § 3-420a.
We affirm summary judgment dismissing the complaint against Summit, reverse summary judgment in favor of Chase, and remand for entry of partial summary judgment on liability against Chase. A determination of damages must abide the outcome of the New York action.
NOTES
[1] Judge Baime did not participate in the argument of this case. He has been added with consent of all counsel.
[2] Egnasko has since been disbarred by both New York and New Jersey. Matter of Egnasko, 151 N.J. 506, 701 A.2d 701 (1997); Matter of Egnasko, 223 A.D.2d 317, 646 N.Y.S.2d 698 (App.Div.1996).
[3] Gibbs had been a record owner with the right of survivorship of an undivided onethird share of the East Orange property along with Grace Livingston and Louise Bevans, to whom Leeds made a mortgage loan. Gibbs apparently died intestate. Although Leeds alone received a deed from the Sheriff, the buyer required that Gibbs be named as a contract seller, and issued the check payable to Leeds and Gibbs, as described. The record reveals no claim by Gibbs' estate to the proceeds of the sale, and the estate is not involved in this appeal.
[4] The amended complaint in Trust Co. of New Jersey v. Egnasko et al., No. 603438/96 (N.Y. Sup.Ct. filed Oct. 24, 1997), alleges that judgment in Trustco's favor against Egnasko was entered on October 18, 1996.
[5] Defendants have been jointly represented in this action, presumably because as between the banks, the broad warranties of N.J.S.A. 12A:4-207 apply, making Chase liable to Summit for any judgment Summit may suffer in favor of Leeds. See2 White & Summers, § 18-6 at 235; see also N.J.S.A. 12A:3-416a.
[6] This provision, formerly N.J.S.A. 12A:3-419, became effective June 1, 1995 as part of an overall revision of Article 3 of the UCC. L. 1995, c. 28, § 1. This case arose after the effective date of the revision. For an examination of the two versions of the statute, see New Jersey Lawyers' Fund for Client Protection v. First Fidelity Bank, N.A., 303 N.J.Super. 208, 223-27, 696 A.2d 728 (App.Div.1997).
[7] None of the parties has raised the question why Trustco was not impleaded in this action, see R. 4:28-1, nor Chase named in the New York action.
[8] Defendants' argument that they were protected by the UFL was raised in the Law Division in a letter brief in response to plaintiff's cross-motion for summary judgment and was described in that brief as "not critical to a decision on this Motion ...." At oral argument on this appeal, we invited both sides to submit supplemental briefs regarding the applicability of the UFL.
[9] Murner v. First Nat'l Bank of Passaic County, 94 N.J.Super. 293, 228 A.2d 88 (App.Div. 1967).
[10] Goldstein v. Commonwealth Trust Co., 19 N.J.Super. 39, 87 A.2d 555 (Hudson County Ct.1952).
[11] New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J. Eq. 264, 270-71, 175 A. 609 (N.J.Ch.1934), aff'd o.b., 119 N.J. Eq. 540, 182 A. 824 (E. & A.1936).
[12] Id.