**NATIONAL ACCIDENT INSURANCE UNDERWRITERS, INC., a Delaware corporation, Plaintiff,**

v.

**CITIBANK, F.S.B., Defendant.**

No. 02 C 3390.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 31, 2003.

Michael J. O'Rourke, Mitchell Bruce Katten, Richard F. Linden, Brian Michael Dougherty, O'Rourke, McCloskey & Moody, Chicago, IL, for Plaintiff.

Todd A. Rowden, Joel A. Brodsky, Joseph H. Kim, Quarles & Brady LLC, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of plaintiff National Accident Insurance Underwriters, Inc. to strike the affirmative defenses and dismiss the counterclaim of defendant Citibank, F.S.B.

This is the third motion to challenge the pleadings in this case, so we will only briefly review those pleadings. Plaintiff's employee, Robert Carter, intercepted certain insurance premium checks that plaintiff's customers had made payable to plaintiff. He was not involved in any facet of plaintiff's business that gave him authority to endorse or negotiate the checks. He altered those checks by adding a "slash" (/) and additional payees, such as "Sherman" or "Sherman Imports, Inc." The alterations were made either in a different type-written font or different handwriting than that used on the original checks. Carter maintained a checking account in the name of the altered payees with defendant. He endorsed and deposited the checks in the Sherman account; defendant accepted the checks and credited the account. The face value of the checks totaled more than $10 million. Defendant then presented the checks for payment to the various drawee banks. Plaintiff filed a one-count complaint against defendant for statutory conversion. After two unsuccessful motions to dismiss, defendant filed an answer, affirmative defenses, and a counterclaim. Defendant asserts seven affirmative defenses, including the failure to join necessary parties, laches, unclean hands, and failure to mitigate damages. As a counterclaim, defendant charges plaintiff with negligent supervision over its employee, Robert Carter, and *respondeat superior.* Plaintiff now moves to strike all the affirmative defenses and dismiss the counterclaims.

Motions to strike affirmative defenses are generally disfavored and should be granted only when the affirmative defense is insufficient on the face of the pleading. See *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1400 (7th Cir.1991). Affirmative defenses are tested under a standard identical to that applied to motions to dismiss under Rule 12(b)(6): they will not be stricken "unless it appears to a certainty that plaintiff[ ] would succeed despite any state of the facts which could be proven in support of the defense." *Id.* Plaintiff's motion to strike defendant's affirmative defenses in this case is a blanket motion which does not address the validity of the individual defenses. Instead, plaintiff argues, simply, that plaintiff is "strictly liable and is not entitled to assert any defenses under UCC § 3–420." (*Plaintiff's Memorandum in Support of Its Motion,* at 3). Couched in these terms, plaintiff's motion is based on some faulty premises.

First, while the court upheld plaintiff's complaint against the defendant's motion to dismiss, that obviously does not mean the case is over and plaintiff triumphs. The tenor of plaintiff's motion is not only that § 3–420 of Illinois' version of the Uniform Commercial Code applies to this case, but that it applies to the exclusion of any other provision. This is quite a leap from the court's prior ruling. All the

court did in that earlier ruling is find that plaintiff had satisfied the notice pleading requirements in the case to a degree adequate to withstand a motion to dismiss. While it appears at this point that § 3–420 applies, the parties have quite a bit more work to do on their positions in this case. Furthermore, even if the provision does apply, that is not to say it applies exclusively. Even if plaintiff were able to lead the court to such a conclusion, it does not explain how the provision sets out "strict liability" let alone how it eliminates any and all affirmative defenses.[1]

■ Second, even if plaintiff were able to direct the court to a "strict liability" provision in § 3–420, all "strict liability" means is "liability without fault." Black's Law Dictionary, at 1422 (6th ed.1990). There is nothing to suggest that it means an absence or elimination of any possible affirmative defenses. There are certainly many examples where affirmative defenses are applicable to strict liability claims. *See, e.g., Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 726 (7th Cir. 2000) (products liability); *Shaw v. Auto-Zone, Inc.*, 180 F.3d 806, 810 (7th Cir.1999) (Title VII); *Illinois v. Grigoleit Co.*, 104 F.Supp.2d 967, 979 (C.D.Ill.2000) (CERCLA). The Uniform Commercial Code itself allows for certain affirmative defenses in situations such as the instant case which may or may not be applicable, as the court

intimated in its earlier ruling. For example, under § 3–406, negligence in contributing to forged signature or alteration of instrument comes into play:

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

810 ILCS 5/3–406. We are still at the pleading stage of this case, and much could change as the parties more fully develop and research their arguments. As of now,

---

1. Plaintiff draws its "strict liability" theory from a single case: *Leeds v. Chase Manhattan Bank, N.A.*, 331 N.J.Super. 416, 752 A.2d 332 (2000). In *Leeds*, the plaintiffs' attorney accepted a settlement check, payable to plaintiffs, on plaintiffs' behalf. The check was a teller's check drawn on Summit Bank. He altered the check by typing his name and "as attorney for" above the plaintiffs' names on the payee line, and deposited the check into his attorney trust account at Chemical Bank, which was succeeded in interest by the defendant, Chase Bank. Chase Bank presented the check for collection, and Summit Bank honored its own teller's check. Plaintiffs' attorney

then paid plaintiffs by drawing a check on an account he maintained at another bank, Trustco. The funds in this account, however, were also the proceeds of checks the attorney had altered. The intended payee of one of those checks, Shrewsbury State Bank, brought an action for conversion against Trustco, which in turn filed suit against plaintiffs and the attorney. Plaintiffs filed an answer and crossclaim, and also brought suit against Chase Bank, as depository bank, and against Summit Bank, as drawer/drawee/payor bank. 331 N.J.Super. at 419–20, 752 A.2d at 334–35.

however, the allegations are that the defendant honored a series of checks totaling $10 million, at least some of which had what could be termed "questionable" alterations, with a payee added in different handwriting or different type fonts than used on the checks originally. At the same time, the plaintiff appeared not to miss these checks, representing $10 million in insurance premium payments due over a two-year period. It is certainly not out of the realm of possibility, at the pleading stage, that certain affirmative defenses may come into play.

As noted earlier, in support of its motion, plaintiff relies almost entirely on *Leeds*, 331 N.J.Super. 416, 752 A.2d 332. While the court in *Leeds* did characterize New Jersey's version of § 3–420 as providing for strict liability, it did not go as far as plaintiff suggests. In fact, the court, reviewing a grant of summary judgement, indicated that certain affirmative defenses might come into play *on a complete record.* 331 N.J.Super. at 424, 752 A.2d at 337. In this case, the parties have not yet advanced past the pleadings and, as such, there is nothing in the *Leeds* decision that would convince this court to foreclose the applicability of all affirmative defenses in this case. Accordingly, we must deny plaintiff's motion to strike the affirmative defenses.

We turn to plaintiff's motion to dismiss defendant's counterclaim. Here, we agree with plaintiff that the two-count counterclaim is poorly, or at least confusingly, drafted. In its two-count counterclaim, defendants charge plaintiff with "negligent supervision" of Carter, and *respondeat superior.* Defendant pleads that, as a result of these failings on plaintiff's part, plaintiff is seeking to hold defendant liable for losses due to Carter's check altering scheme. Essentially, defendant is arguing that, even if plaintiff's allegations are true, plaintiff is not entitled to recover. Such allegations are more in the vein of affirma-

tive defenses, as defendant seems to concede. (*Response to Plaintiff's Motion to Strike,* at 13–14). Accordingly, we will grant plaintiff's motion to dismiss the counterclaim, without prejudice to defendant amending its affirmative defenses.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to strike the defendant's affirmative defenses is DENIED, and plaintiff's motion to dismiss defendant's counterclaim is GRANTED, without prejudice to defendant amending its affirmative defenses.