39 A.3d 248 (2012)
425 N.J. Super. 33
300 BROADWAY HEALTHCARE CENTER, L.L.C., d/b/a New Vista Nursing and Rehabilitation Center, Plaintiff-Respondent,
v.
WACHOVIA BANK, N.A., Commerce Bank, N.A., Garden State Check Cashing Service, Inc., Peter Joseph Leus, a/k/a Joseph Q. Leus, Comic World Enterprises, Inc, Jenny M. Miqui, Martin Friedman Associates, P.C., and Zesha Auerbach, Defendants-Respondents, and
PNC Bank, N.A., Defendant-Appellant.
300 Broadway Healthcare Center, L.L.C., d/b/a New Vista Nursing and Rehabilitation Center, Plaintiff-Respondent,
v.
Wachovia Bank, N.A., PNC Bank, N.A., Garden State Check Cashing Service, Inc., Peter Joseph Leus, a/k/a Joseph Q. Leus, Comic World Enterprises, Inc., Jenny M. Miqui, Martin Friedman Associates, P.C., and Zesha Auerbach, Defendants-Respondents, and
Commerce Bank, N.A., n/k/a TD Bank, N.A., Defendant-Appellant.
Docket Nos. A-5023-10T3, A-5025-10T3
Superior Court of New Jersey, Appellate Division.
Telephonically argued February 24, 2012.
Decided March 27, 2012.
*249 Gregg S. Sodini, Edison, argued the cause for appellant PNC Bank, N.A. (Law Offices of Gregg S. Sodini, L.L.C., attorneys; Mr. Sodini, on the brief).
William T. Marshall, Jr., argued the cause for appellant TD Bank, N.A., formerly Commerce Bank, N.A. (Zeichner Ellman & Krause, L.L.P., attorneys; Mr. Marshall and Kerry A. Duffy, Roseland, on the brief).
Frederick C. Biehl, III, Roseland, argued the cause for respondent (Soriano, Henkel, Biehl & Matthews, P.C., attorneys; Mr. Biehl, on the brief).
Before Judges YANNOTTI, ESPINOSA and KENNEDY.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
We granted defendants TD Bank (TDB), formerly Commerce Bank (Commerce), and PNC Bank, N.A. (PNC) leave to appeal from orders entered by the trial court denying their motions for summary judgment on conversion claims asserted against them by plaintiff 300 Broadway Healthcare Center, L.L.C., an entity doing business as New Vista Nursing and Rehabilitation Center (New Vista). We consolidate the appeals for purpose of decision and reverse.
The relevant facts are essentially undisputed. New Vista is a nursing home and employed Peter Joseph Leus (Leus) as controller and later as its Chief Financial Officer. Leus reported to Steven and Brian Kleiman (the Kleimans), the administrators of the nursing home. New Vista maintained checking accounts at Wachovia Bank, N.A. (Wachovia) and its predecessor, First National Bank.
New Vista alleges that Wachovia arranged for and paid Garden State Check Cashing (GSCC) to provide check cashing services to its employees. It also alleges that Leus maintained a personal checking account at TDB, and a checking account at PNC in the name of Comic World.
According to New Vista, Leus issued illegitimate checks drawn upon New Vista's accounts at Wachovia, by forging the name of an authorized signatory on the checks, and cashing or depositing those checks into his account at TDB and the Comic World account at PNC. New Vista claims that some of the checks also had forged endorsements. It appears that TDB and PNC presented the checks to Wachovia, which paid TDB and PNC with monies drawn from New Vista's account.
On July 29, 2005, New Vista filed a complaint in the Law Division in which it asserted claims against Wachovia, TDB, PNC, Leus and others. New Vista alleged that TDB and PNC violated the Uniform Commercial Code (UCC), specifically N.J.S.A. 12A:3-401, by receiving payment on checks with unauthorized signatures (count one); negligently failed to adhere to reasonable, usual and customary banking practices (count two); converted its funds (count three); and were negligent in the supervision of their respective employees (count five).
In December 2007, TDB and PNC filed motions for summary judgment, seeking dismissal of all of the claims asserted against them. The motion judge granted the motions for summary judgment on the claims in counts one, two and five, but denied the motions as to the conversion claims in count three. The court rejected TDB's and PNC's argument that New Vista's claims for conversion were barred by N.J.S.A. 12A:3-420(a), which provides that:
The law applicable to conversion of personal property applies to instruments. *250 An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
The motion judge concluded that the statute precludes an action for conversion for checks that the Kleimans signed, regardless of the circumstances under which the checks were obtained, because New Vista was the "issuer" of those checks for purposes of N.J.S.A. 12A:3-420(a). The motion judge determined, however, that the statute does not preclude New Vista from asserting a claim for conversion for checks on which Leus forged the maker's signature because, according to the judge, New Vista was not the "issuer" of those checks.
The motion judge stated that this interpretation of the statute was consistent with the "basic concept of conversion." The judge stated:
Conversion is taking away someone else's property. In a case where [New Vista] writes a check, it is voluntarily parting with the funds represented by the check. Once the check is written, the funds are no longer its property; and, therefore, cannot be the subject of a claim for conversion. On the other hand, where [New Vista] did not write the check, where for example a party's name is forged, that party never gave up on its property rights, the property still belongs to it and therefore the property may be the subject of a claim for conversion.
The motion judge entered orders dated September 17, 2008, memorializing its decisions. On October 24, 2008, TDB and PNC filed motions for reconsideration. The judge denied the motions.
After the time for discovery had expired, TDB and PNC renewed their motions for summary judgment, again seeking dismissal of the conversion claims in count three. Plaintiff opposed the motions and filed a cross-motion for leave to amend the complaint, reinstate the negligence claims and claims for negligent supervision or permit the filing of an amended complaint to include claims under N.J.S.A. 12A:3-404, N.J.S.A. 12A:3-405, and N.J.S.A. 12A:3-406. TDB and PNC opposed the cross-motion.
On March 18, 2011, the trial court considered the motions. The court recognized that it had authority to review and reverse the motion judge's earlier rulings but refused to do so. The court entered orders dated March 18, 2011, denying TDB's and PNC's motions, as well as plaintiff's cross-motion. TDB and PNC later filed motions for reconsideration. The court entered orders dated April 26, 2011, denying the motions. Thereafter, we granted motions by TDB and PNC for leave to appeal.
TDB and PNC argue that the motion judge erred by finding that N.J.S.A. 12A:3-420(a) does not preclude New Vista from asserting a claim against them for conversion when an instrument bears a forged drawer's signature. We agree.
As we stated previously, N.J.S.A. 12A:3-420(a) provides in pertinent part that an action for conversion may not be brought by an "issuer" of the check. Here, the motion judge determined that where a person forges the signature of a person authorized to sign a maker's check, the maker *251 cannot be considered the "issuer" of that check under N.J.S.A. 12A:3-420(a). In our view, the motion judge erred in her analysis.
The word "issuer" is defined in N.J.S.A. 12A:3-105(c) to mean "a maker or drawer of an instrument." Furthermore, the term "drawer" is defined in N.J.S.A. 12A:3-103(a)(3) to mean "a person who signs or is identified in a draft as a person ordering payment." Therefore, the "issuer" of a check includes the person "identified as a person ordering payment" of the instrument, regardless of whether the signature of that person is forged.
In this case, it is undisputed that New Vista was the "person identified as the person ordering payment of the checks." Thus, New Vista was the "issuer" of the checks, regardless of whether Leus forged the name of a person authorized to sign the checks on New Vista's behalf.
Consequently, N.J.S.A. 12A:3-420(a) precludes New Vista from asserting conversion claims based on the forged checks. The official comment to UCC 3-420 supports this conclusion:
There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer. The drawer has an adequate remedy at law against the payor bank for recredit of the drawer's account for the unauthorized payment of the check.
Therefore, the issuer of a check may not assert a conversion claim for unauthorized payment of a check, including a conversion claim based on an unauthorized payment made on a forged maker's signature. The issuer's remedy is to have the payor bank recredit its account for any such payment. See also Guardian Life Ins. Co. of Am. v. Weisman, 223 F.3d 229, 238 (3d Cir.2000) (noting that N.J.S.A. 12A:3-420(a) "expressly disavows that a conversion action is available to drawers" of instruments).
We note that, although the New Jersey courts have not addressed the question in a published opinion, courts in other jurisdictions have concluded that the UCC precludes the maker of a check from bringing a conversion claim based on a check with a forged maker's signature. See Mid-Continent Specialists, Inc. v. Capital Homes, L.C., 279 Kan. 178, 106 P.3d 483 (2005) (holding that the UCC precludes a maker of a check from bringing an action for conversion where maker's employee issued check as part of a scheme to embezzle the drawer's funds); Halifax Corp. v. Wachovia Bank, 268 Va. 641, 604 S.E.2d 403 (2004) (holding that statute analogous to N.J.S.A. 12A:3-420(a) precludes a maker of a check from asserting a conversion claim against bank where check had a forged maker's signature); Simmons v. Lennon, 139 Md.App. 15, 773 A.2d 1064, 1072 (2001) (concluding that under the UCC, a maker of a check may not maintain an action for conversion against payee of the check when the maker's signature was forged).
Here, the motion judge also stated that her interpretation of N.J.S.A. 12A:3-420(a) was supported by Leeds v. Chase Manhattan Bank, N.A., 331 N.J.Super. 416, 752 A.2d 332 (App.Div.2000). In that case, the plaintiffs retained an attorney to represent them in a mortgage foreclosure action and to assist them in purchasing and reselling the property on which they held the mortgage. Id. at 418, 752 A.2d 332.
The matter was settled and a check issued, but the attorney altered the settlement check by printing his name above the payee line Id. at 419, 752 A.2d 332. The attorney then deposited the check into his trust account. Ibid. The attorney later issued another check to the plaintiffs *252 drawn upon his trust account which apparently covered the proceeds of the sale of the plaintiffs' home. Ibid.
However, the attorney's trust account also contained monies that the attorney had acquired by altering the name of the payee on a check issued in an unrelated transaction. Ibid. The attorney used those funds to pay the plaintiffs. Ibid. A suit was filed against the plaintiffs and their attorney for conversion. Ibid. The plaintiffs, in turn, brought suit against the attorney and the depository bank. Id. at 420, 752 A.2d 332. The plaintiffs claimed that the bank was liable for conversion of monies due to them in the form of the settlement check that had been delivered to their attorney. Ibid.
We held that N.J.S.A. 12A:3-420 permitted the plaintiffs to assert a conversion claim against the depository bank because the check had been delivered to their attorney with the intent that the settlement proceeds be transferred to the plaintiffs. Id. at 421, 752 A.2d 332. We stated that the monies had been converted because the attorney was not authorized to endorse the check and had no right to receive payment on that instrument. Id. at 422, 752 A.2d 332.
Although we said in Leeds that the depository bank would be strictly liable for conversion of a forged or stolen instrument, that case involved a conversion claim by the payee of the check, not its "issuer." Thus, Leeds has no bearing on the question of whether N.J.S.A. 12A:3-420(a) precludes a maker from asserting a conversion claim on a check if its signature has been forged.
The motion judge also stated that a conversion can occur when the maker's name is forged on a check because, under these circumstances, the maker did not voluntarily part with and give up its right to the funds represented by the check. However, this analysis is inconsistent with the Official Comment to UCC 3-420, which states that a check is an obligation of the maker rather than the maker's property.
Moreover, as the court explained in Guardian Life, "[u]nlike a payee who had possession of a check, a drawer has no doctrinal basis for claiming conversion: `one's own check is an obligation, not a right. It is a liability that cannot be stolen, not an asset that can be stolen.'" Guardian Life, supra, 223 F.3d at 238 (quoting James J. White & Robert S. Sommers, Uniform Commercial Code, 220 (4th ed.1995)).
Reversed and remanded to the trial court for entry of orders granting summary judgment in favor of TDB and PNC.