SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## Dr. Dominick A. Lembo v. Arlene Marchese (A-92-18) (082930)

**Argued January 22, 2020 -- Decided June 17, 2020**

**ALBIN, J., writing for the Court.**

In this case, the Court considers whether the trial court properly dismissed the common law claims of conversion and negligence that Dr. Dominick Lembo brought against TD Bank National Association, as well as whether the Uniform Fiduciaries Law (UFL) provides an affirmative cause of action against the bank.

Dr. Lembo employed in his dental practice Arlene Marchese, his office manager, and Karen Wright, a dental hygienist. Sometime before December 2011, Marchese and Wright unlawfully took possession of numerous checks totaling several hundred thousand dollars, forged Lembo's indorsement on the checks, and deposited the proceeds from the forged checks into their personal accounts at TD Bank.

In February 2015, Lembo filed a complaint against TD Bank, alleging that "TD Bank knew or should have known that Marchese and/or Wright were not permitted to negotiate checks made payable to [Lembo]." The complaint also alleged that by permitting them to negotiate checks with forged indorsements, TD Bank "aided and abetted Marchese and Wright in their fraudulent scheme and conduct." The complaint did not assert that Lembo had a banking relationship with TD Bank. And Lembo did not file an action for conversion under the Uniform Commercial Code (UCC) within the three-year limitations period. Had Lembo done so, TD Bank would have been strictly liable for depositing or cashing those checks, subject to the defenses in N.J.S.A. 12A:3-405 or N.J.S.A. 12A:3-406.

In lieu of filing an answer, TD Bank moved to dismiss the complaint for failure to state a claim. The trial court granted the motion. The court reasoned that the UCC governed Lembo's remedies against TD Bank and that "common law negligence is not such a remedy" in the absence of a "special relationship" between Lembo and the bank. The court also rejected Lembo's argument that the Uniform Fiduciaries Law provided the basis for a cause of action.

The Appellate Division affirmed in part, vacated in part, and remanded for further proceedings. The Appellate Division first noted that the complaint, on its face, alleges

1

only common law claims and not any express statutory claims against TD Bank. Because the complaint did not allege facts suggesting a "special relationship" between Lembo and TD Bank, the Appellate Division found no basis for the negligence claim. Likewise, it found the common law conversion claim unsustainable because the UCC provided a remedy for a bank's payment on a check with a forged indorsement.

But, while conceding that the complaint neither references the UFL nor alleges that Marchese or Wright were acting as fiduciaries within the meaning of the UFL, the Appellate Division nevertheless reasoned that the complaint suggests an affirmative cause of action against TD Bank based on the UFL. On that basis, the Appellate Division vacated the order dismissing Lembo's cause of action against TD Bank and remanded to allow Lembo to amend the complaint and plead a UFL claim.

The Court granted TD Bank's petition for certification. 238 N.J. 482 (2019).

**HELD:** The UFL does not authorize an affirmative cause of action against a bank but rather provides a bank with a limited immunity from liability for failing to take notice of and action on the breach of a fiduciary's obligation. The UFL does not displace, subsume, or supplement common law claims. When an action is brought against a bank, the UFL provides that a bank's liability depends on whether the bank acted with actual knowledge or bad faith in the face of a fiduciary's breach of his obligations. Whether a UFL claim was adequately pled in this case is therefore a moot issue. And, recognizing the predominant role the UCC plays in assigning liability for the handling of checks, the Court also finds that Lembo had no "special relationship" with the bank to sustain the common law causes of action.

1. When the Legislature adopted the UFL's predecessor, the Uniform Fiduciaries Act (UFA), in 1927, various common law causes of action could be brought against a bank for the breach of its duty to monitor a fiduciary. No gap in the common law required the remedy of a new statutory cause of action against a bank. Instead, the Legislature, in enacting the model UFA, addressed the need to protect banks from lawsuits that would impose on them an unrealistic obligation to oversee fiduciaries. The UFA relieved banks of the then-prevailing, "impracticable" common law duty of inquiry in connection with a bank's dealings with a fiduciary by setting forth an actual knowledge or bad faith standard for determining notice. By relaxing the common law standard of care banks owed in dealing with fiduciaries, the UFA was intended to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries. The current version of the UFL, N.J.S.A. 3B:14-52 to -61, which was enacted in 1981, is substantially similar to its UFA predecessor. (pp. 11-14)

2. The relevant UFL provisions at issue in this case are N.J.S.A. 3B:14-55 and -58. The Court reviews those provisions in detail and concludes from their plain language that a bank is not liable in a common law cause of action unless it has "actual knowledge" or

2

"notice" of a breach of a fiduciary duty -- or acts in "bad faith" in depositing or paying on a check. That heightened standard provides banks with a limited immunity. Nothing in the plain language of the UFL suggests that the UFL is itself the basis for an affirmative cause of action. The UFL does not provide for a recovery through a private action or set forth remedies or a statute of limitations -- all indicia of a statutory cause of action. In sum, the UFL's plain language and its legislative history evidence a legislative intent to provide a limited immunity to banks from common law causes of action -- not to provide a new affirmative cause of action against a bank. (pp. 15-18)

3. The Court notes that its holding in this matter of first impression is not inconsistent with past jurisprudence, including New Jersey Title Insurance Co. v. Caputo, 163 N.J. 143 (2000), on which Lembo relies. In that case, the Court did not indicate that the UFL gave rise to an affirmative claim but rather confirmed that under the UFL "a bank would be immune from liability in honoring a fiduciary's check" unless it is shown that the bank acted with actual knowledge of the breach of a fiduciary's obligations or with knowledge of facts establishing that its actions amounted to bad faith. Id. at 149 (emphasis added). (pp. 18-20)

4. In rendering this decision, the Court is mindful that interposing an affirmative UFL cause of action -- particularly in this case -- might undermine the UCC's comprehensive framework for allocating and apportioning the risks of handling checks. Generally, a bank will be strictly liable for accepting a check with a forged indorsement. Lembo's complaint alleges that TD Bank accepted checks payable to Lembo with forged indorsements. In the absence of a defense under either N.J.S.A. 12A:3-405 or N.J.S.A. 12A:3-406, TD Bank would have been strictly liable for conversion of the funds had Lembo filed a timely UCC claim. "[A]n action for conversion of an instrument . . . must be commenced within three years after the cause of action accrues," N.J.S.A. 12A:3-118(g), and the discovery rule does not extend the limitations period. Lembo did not file a UCC claim within the requisite three-year statute-of-limitations period. (pp. 21-22)

5. Lembo's common law conversion claim is preempted by the UCC, and his common law negligence claim cannot be sustained. Unless the facts establish a special relationship between the parties created by agreement, undertaking, or contact that gives rise to a duty, the sole remedies available in cases involving the processing of checks with forged indorsements are those provided in the UCC. Lembo's complaint does not allege that Lembo had a banking or other relationship with TD Bank, much less a special relationship created by agreement, undertaking, or contact, and the Appellate Division properly affirmed the dismissal of the common law claims. (pp. 23-24)

**REVERSED. The trial court's order dismissing this action is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-92 September Term 2018

082930

Dr. Dominick A. Lembo and
Belmont Dental Associates,

Plaintiffs-Respondents,

v.

Arlene Marchese, Karen Wright,
Kreinces, Rollins & Shanker, LLC
and Maria T. Rollins, CPA,

Defendants,

and

TD Bank, NA,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| January 22, 2020 | June 17, 2020 |

Caitlin T. Shadek argued the cause for appellant
(Sherman Wells Sylvester & Stamelman, attorneys;
Caitlin T. Shadek and Anthony J. Sylvester, on the
briefs).

Michael P. De Marco argued the cause for respondents
(De Marco & De Marco, attorneys; Michael P. DeMarco,
on the brief).

1

In this case, two employees of plaintiff Dr. Dominick Lembo, a dentist and owner of plaintiff Belmont Dental Associates (Lembo), forged indorsements on checks payable to the dental practice and deposited them into their personal accounts at defendant TD Bank National Association (TD Bank). Lembo filed common law causes of action against TD Bank, which included counts for conversion and negligence. Lembo did not file an action for conversion under the Uniform Commercial Code (UCC), see N.J.S.A. 12A:3-420, within the three-year limitations period, see N.J.S.A. 12A:3-118(g). Had Lembo done so, TD Bank would have been strictly liable for depositing or cashing those checks, subject to the defenses in N.J.S.A. 12A:3-405 or N.J.S.A. 12A:3-406.

The trial court granted TD Bank's motion to dismiss the complaint for failure to state a claim, finding that Lembo had no banking or "special relationship" with TD Bank to sustain the common law causes of action. The court also rejected Lembo's argument that the Uniform Fiduciaries Law (UFL), N.J.S.A. 3B:14-52 to -61, provided an affirmative cause of action against the bank.

2

The Appellate Division reversed, reading into the complaint the basis for an affirmative UFL claim, and remanded to allow Lembo to amend the complaint to assert such a claim.

We conclude that the Appellate Division misconstrued the purpose of the UFL. The Legislature enacted the UFL not to create an affirmative cause of action against a bank but to provide a defense when the bank is sued for failing to take notice of and action on the breach of a fiduciary's obligation. The UFL confers a limited immunity on a bank, unless the bank acts in bad faith or has actual knowledge of a fiduciary breach. We hold that no affirmative cause of action arises under the statute. Whether a UFL claim was adequately pled is therefore a moot issue. Recognizing the predominant role the UCC plays in assigning liability for the handling of checks, we also find that Lembo had no "special relationship" with the bank to sustain the common law causes of action.

Accordingly, we reverse the judgment of the Appellate Division and dismiss the complaint for failure to state a claim.

## I.

### A.

This appeal comes to us from a motion to dismiss for failure to state a claim upon which relief can be granted. See R. 4:6-2(e). At this procedural

3

juncture, we must assume that the facts asserted in the complaint are true. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005). Our recitation of the facts is derived from the complaint filed by Lembo against TD Bank, the only remaining defendant in this case.

Dr. Lembo employed in his dental practice Arlene Marchese, his office manager, and Karen Wright, a dental hygienist. Sometime before December 2011, Marchese and Wright unlawfully took possession of numerous checks issued by insurance companies to Lembo for dental services rendered to patients. Without Dr. Lembo's knowledge or authorization, Marchese and Wright forged his indorsement on the checks, which totaled several hundred thousand dollars. Marchese and Wright "negotiated [the] forged checks" with TD Bank, where each had a personal bank account. They then deposited the proceeds from the forged checks into their personal accounts at the bank.

In February 2015, Lembo filed a complaint against TD Bank, alleging that "TD Bank knew or should have known that Marchese and/or Wright were not permitted to negotiate checks made payable to [Lembo]."[1] The complaint

_____

[1] The complaint also asserted claims against Marchese and Wright for fraud, unjust enrichment, conversion, and breach of their duties of honesty and fair dealing, as well as against Lembo's certified public accountant and accounting firm for negligently failing to detect the fraud. Lembo secured a judgment against Marchese in the amount of $198,584.06 for compensatory damages and $75,000 in punitive damages and a judgment against Wright in the amount of

4

also alleged that by permitting Marchese and Wright to negotiate checks with forged indorsements, TD Bank "aided and abetted Marchese and Wright in their fraudulent scheme and conduct." The complaint did not assert that Lembo had an account or banking relationship with TD Bank.

In lieu of filing an answer, TD Bank moved to dismiss the complaint for failure to state a claim. See R. 4:6-2(e). The trial court granted the motion and dismissed the complaint with prejudice. The court reasoned that the UCC governed Lembo's remedies against TD Bank and that "common law negligence is not such a remedy" in the absence of a "special relationship" between Lembo and the bank. The court determined that Lembo failed to demonstrate the existence of a special relationship with TD Bank. The court also rejected Lembo's argument that the Uniform Fiduciaries Law provided the basis for a cause of action. In dismissing that argument, the court concluded that Marchese and Wright were acting as errant employees, not fiduciaries, and that TD Bank had no fiduciary relationship with Dr. Lembo or his dental practice, who were not bank customers.

---

$200,000 in compensatory damages and $25,000 in punitive damages. Ultimately, Lembo dismissed the claim against the accountant and accounting firm.

5

B.

In an unpublished per curiam opinion, the Appellate Division affirmed in part, vacated in part, and remanded for further proceedings. The Appellate Division first noted that the complaint, on its face, alleges only common law claims, such as negligence and conversion, and not any express statutory claims against TD Bank. The Appellate Division acknowledged both the predominant role of the UCC in "allocating and apportioning the risks of handling checks" and our jurisprudence, which holds that a common law cause of action against a bank is permitted only in rare instances, such as when the bank and aggrieved party have a "special relationship," quoting City Check Cashing, Inc. v. Manufacturers Hanover Trust Co., 166 N.J. 49, 57, 59-60 (2001). Because the complaint did not allege facts suggesting a "special relationship" between Lembo and TD Bank, the Appellate Division found no basis for the negligence claim. Likewise, it found the common law conversion claim unsustainable because the UCC provided a remedy for a bank's payment on a check with a forged indorsement, citing N.J.S.A. 12A:3-420(a). Even if the complaint intimated a claim under the UCC, the court asserted that such a claim would be time-barred, citing N.J.S.A. 12A:3-118(g).

While conceding that the complaint neither references the UFL nor alleges that Marchese or Wright were acting as fiduciaries within the meaning

6

of the UFL, the Appellate Division nevertheless reasoned that the complaint suggests an affirmative cause of action against TD Bank based on the UFL. The Appellate Division determined that the UFL authorizes an affirmative cause of action when a fiduciary breaches its obligation to a principal by forging a check and the bank "takes the instrument with actual knowledge of the breach or with knowledge of facts that [its] action in taking the instrument amounts to bad faith," quoting N.J.S.A. 3B:14-55. It then gleaned from a liberal reading of the complaint a viable allegation that, under the UFL, Marchese and Wright were acting in a fiduciary capacity as "constructive trustees," see N.J.S.A. 3B:14-53(b), and that TD Bank knowingly "accepted the checks with forged [i]ndorsements and deposited them in" Marchese's and Wright's personal accounts. Those allegations, in the Appellate Division's view, sufficiently satisfied the bad faith elements for a UFL cause of action under N.J.S.A. 3B:14-55 and -58(b).

On that basis, the Appellate Division vacated the order dismissing Lembo's cause of action against TD Bank and remanded to allow Lembo to amend the complaint and plead a UFL claim.

We granted TD Bank's petition for certification. 238 N.J. 482 (2019).

7

## II.

## A.

TD Bank's primary argument is that the UFL did not create an affirmative cause of action against a depository bank and, on that basis alone, the Appellate Division's decision must be reversed. TD Bank contends that the UFL was enacted "to protect banks from the undue burden of monitoring fiduciary accounts" and to make "<u>defenses</u> available to a bank for alleged theft by a fiduciary." It submits that the UFL does not supersede the UCC. According to the bank, the Appellate Division has taken a time-barred UCC claim on a forged indorsement and breathed life into it through the UFL, thus undermining the UCC's statutory framework for allocating the risk of loss on a forged instrument.

In addition, TD Bank asserts that, as described in the complaint, Marchese and Wright were employees -- not fiduciaries -- who wrongfully took possession of checks payable to their employer and forged indorsements. In the bank's view, "forgers cannot be fiduciaries." The bank also rejects the notion that Marchese and Wright, who took the checks without any lawful authority, could be considered "constructive trustees" under the UFL.

8

B.

Lembo submits that the complaint clearly alleges that TD Bank, by permitting Marchese and Wright to negotiate checks with forged indorsements, "aided and abetted [them] in their fraudulent scheme and conduct." Asserting that the UFL establishes an independent cause of action separate from claims available under the UCC, Lembo argues that, viewing the complaint with "liberality," "a cause of action is suggested by the facts . . . [that] may be articulated" by an amendment to the complaint.

Lembo further claims that, for purposes of the UFL, Marchese and Wright fit the definition of fiduciary in N.J.S.A. 3B:14-53(b) by acting as "constructive trustees" -- taking unlawful possession of dental-practice checks, forging indorsements, depositing the ill-gotten funds into their personal accounts, and unjustly enriching themselves. According to Lembo, whether TD Bank acted in bad faith under the UFL -- that is, whether the "[b]ank recklessly disregarded or was purposefully oblivious to facts suggesting impropriety by Marchese and Wright" -- is for a jury to determine.

Lembo asks this Court to affirm the Appellate Division's remand.

III.

The core issue in this appeal is whether the Uniform Fiduciaries Law is the source of an affirmative cause of action against a bank. That is the only

9

basis for relief that the Appellate Division gleaned from a liberal review of the complaint. Without a UFL cause of action, therefore, the complaint cannot be sustained. Only if a direct cause of action can arise from the UFL must we address whether a UFL claim has been sufficiently pled in the complaint, even under our generous standard of review for a Rule 4:6-2(e) motion.

## A.

Whether the UFL gives rise to an affirmative cause of action against a bank is a matter of statutory interpretation. To discern the meaning of a statute, we begin with its plain language. DiProspero v. Penn, 183 N.J. 477, 492 (2005). If the statutory language clearly reveals the Legislature's intent, then our interpretive mission comes to an end. Nicholas v. Mynster, 213 N.J. 463, 480 (2013). Only when the wording of the statute leaves in doubt the Legislature's intent do we turn to extrinsic aids, such as "legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

We cannot find in the plain language or history of the UFL a legislative intent to create an affirmative cause of action against a bank for the breach of a duty to monitor a fiduciary's activities. Because, as Justice Holmes has written, "a page of history is worth a volume of logic," N.Y. Tr. Co. v. Eisner,

10

256 U.S. 345, 349 (1921), the backdrop to the current version of the UFL sheds meaning and light on its language.  We therefore begin with the UFL's predecessor, the Uniform Fiduciaries Act (UFA), N.J.S.A. 3A:41-1 to -14 (repealed 1981).

B.

In 1927, New Jersey adopted in full the model Uniform Fiduciaries Act drafted by the National Conference of Commissioners on Uniform State Laws. See Sponsor's Statement to S. 71 5 (L. 1927, c. 30).  At the time of the UFA's passage, various common law causes of action could be brought against a bank for the breach of its duty to monitor a fiduciary.  See, e.g., Md. Cas. Co. v. Bank of Charlotte, 340 F.2d 550, 553 (4th Cir. 1965) ("At common law a [bank] was often held liable to the principal if it negligently assisted a fiduciary in misappropriating the principal's funds.").  No gap in the common law required the remedy of a new statutory cause of action against a bank. Instead, the Legislature, in enacting the model UFA, addressed the need to protect banks from lawsuits that would impose on them an unrealistic obligation to oversee fiduciaries.

The purpose of the UFA was "to relieve banks of their common-law duty of inquiring into the propriety of each transaction conducted by a fiduciary and to prevent banks and others who typically deal with fiduciaries from being

11

held liable for a fiduciary's breach of duty." See 9 C.J.S. Banks and Banking § 362 (2020) (citing DeLaRosa v. Farmers State Bank S/B, 474 S.W.3d 240, 244 (Mo. Ct. App. 2015)); see also Sugarhouse Fin. Co. v. Zions First Nat'l Bank, 440 P.2d 869, 870 (Utah 1968). The Legislature evidently decided that a bank could not feasibly shadow the activities of fiduciaries to ensure they were acting in good faith on behalf of their principals. See Colby v. Riggs Nat'l Bank, 92 F.2d 183, 198 (D.C. Cir. 1937); New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J. Eq. 264, 283 (Ch. 1934), aff'd o.b., 119 N.J. Eq. 540 (E. & A. 1936). To address that concern, the UFA conferred on banks limited immunity from lawsuits alleging liability for a fiduciary's breach of duty.

The Legislature made clear its purpose in the Sponsor's Statement to the bill that became the UFA. The Sponsor's Statement explained that banks, for many years, had "been suffering from the uncertainty of the law created by conflicting decisions, many of which have imposed an impracticable duty of inquiry in connection with the handling and payment of checks drawn or endorsed by officers of corporations or other fiduciaries to their personal order." Sponsor's Statement to S. 71 5 (L. 1927, c. 30). The Statement further explained that

> [t]he general purpose of the act is to establish uniform
> and definite rules in place of the diverse and indefinite

12

rules now prevailing as to "constructive notice" of breaches of fiduciary obligations. In some cases there should be no liability in the absence of actual knowledge or bad faith; in others there should be action at peril. In none of the situations here treated is the standard of due care or negligence made the test.

[Ibid. (emphasis added).]

The Legislature intended the UFA to cover situations involving a bank's transactions with a person it "knows to be a fiduciary" when there are "questions relating to notice of the breach of fiduciary obligations." Ibid. The UFA relieved banks of the then-prevailing, "impracticable" common law duty of inquiry in connection with a bank's dealings with a fiduciary by setting forth an actual knowledge or bad faith standard for determining notice. See Md. Cas. Co., 340 F.2d at 553 ("The Uniform Fiduciaries Act did away with the [banks]'s liability for negligence and substituted a new test. For the [bank] to become liable under this Act it must be found either that it had actual knowledge of the misappropriation or that it acted in bad faith."). Thus, under the UFA, the standard was not whether a reasonable person acting with due care would have been on notice of a breach of a fiduciary obligation. See New Amsterdam Cas. Co., 117 N.J. Eq. at 271 ("The standard of due care or negligence and the doctrine of constructive notice in respect of bank deposits

13

of fiduciary funds find no recognition in the Fiduciaries Act. It definitely declares bad faith to be the test of liability.").

By relaxing the common law standard of care banks owed in dealing with fiduciaries, the UFA was intended "to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries, by relieving the bank of the responsibility of seeing that the fiduciary uses the entrusted funds for proper purposes." 9 C.J.S. Banks and Banking § 362 (footnote omitted); see also Springfield Township v. Mellon PSFS Bank, 889 A.2d 1184, 1187 (Pa. 2005); Sugarhouse Fin. Co., 440 P.2d at 870.

Although the enactment of New Jersey's UCC in 1961 repealed certain portions of the UFA that are not relevant to this case, the remaining parts of the UFA served as a model for the UFL. See N.J. Title Ins. Co. v. Caputo, 163 N.J. 143, 149 (2000). The current version of the UFL is substantially similar to its UFA predecessor. Compare N.J.S.A. 3B:14-55, with N.J.S.A. 3A:41-6 (repealed 1981); compare N.J.S.A. 3B:14-58, with N.J.S.A. 3A:41-7 (repealed 1981). With that history in mind, we turn to the UFL, N.J.S.A. 3B:14-52 to -61, which was enacted in 1981, L. 1981, c. 405, replacing the UFA.

C.

The relevant UFL provisions at issue in this case are N.J.S.A. 3B:14-55 and -58.  We first look at N.J.S.A. 3B:14-55, which states:

> If a check or other bill of exchange is drawn by a fiduciary as such or in the name of his principal by a fiduciary empowered to draw the instrument in the name of his principal, payable to the fiduciary personally, or payable to a third person and by him transferred to the fiduciary, and is thereafter transferred by the fiduciary, whether in payment of a personal debt of the fiduciary or otherwise, the transferee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in transferring the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of the breach or with knowledge of facts that his action in taking the instrument amounts to bad faith.

That provision simply provides, for example, that when, from all appearances, a fiduciary draws a check from the principal's account to pay a debt of the principal, the bank is not on notice of a breach of a fiduciary obligation unless the bank takes the check "with actual knowledge of the breach or with knowledge of facts that . . . amounts to bad faith."  See N.J.S.A. 3B:14-55.  Thus, the UFL immunizes the bank from a negligence-type action premised on the common law duty to exercise due care.

15

We turn next to N.J.S.A. 3B:14-58, which provides:

> a. If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw thereon, or, except as provided in subsection b. of this section, if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving the deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary. The bank is authorized to pay the amount of the deposit of any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making the deposit or in drawing the check, or with knowledge of facts that its action in receiving the deposit of paying the check amounts to bad faith.

> b. In the case of an instrument payable to the principal or the fiduciary as fiduciary, the bank has notice of the breach of fiduciary duty if the instrument is deposited to an account other than an account of the fiduciary, as fiduciary, or an account of the principal.

Subsection (a) of that provision provides, for example, that when a fiduciary draws a check from the fiduciary's account or the principal's account and deposits that check "in a bank to his personal credit," the bank has no duty to inquire whether the fiduciary is in breach of his fiduciary obligation -- with two exceptions. See N.J.S.A. 3B:14-58(a). If the bank deposits or pays on a check "with actual knowledge that the fiduciary is committing a breach of his

16

obligation . . . or with knowledge of facts that its action in receiving the deposit of paying the check amounts to <u>bad faith</u>," then the bank faces legal liability.  <u>Ibid.</u> (emphases added).  Subsection (b) makes clear that when a check is made payable to the fiduciary or the principal and the check is not deposited in the fiduciary's or principal's account, "the bank has notice of the breach of fiduciary duty."  <u>See</u> N.J.S.A. 3B:14-58(b).

Thus, a bank is not liable in a common law cause of action unless it has "actual knowledge" or "notice" of a breach of a fiduciary duty -- or acts in "bad faith" in depositing or paying on a check.  That heightened standard provides banks with a limited immunity.

Nothing in the plain language of the UFL suggests that the UFL is itself the basis for an affirmative cause of action.  The UFL does not provide for a recovery through a private action or set forth remedies or a statute of limitations -- all indicia of a statutory cause of action.  Indeed, the Legislature knows how to craft a statutory scheme that provides for a cause of action to complement or supplant the common law.  For example, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -224, specifically "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace."  <u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 360-61 (2016) (quoting <u>Gonzalez v. Wilshire Credit Corp.</u>, 207 N.J. 557, 576 (2011));

see also D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120 (2007) (holding that the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, "authorizes an aggrieved employee to bring a civil suit against an employer who retaliates in violation of the statute" (citing N.J.S.A. 34:19-5)); Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 130 (2001) (explaining that New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 to -49, "provides a mechanism by which victims of discrimination may seek redress for their injuries" (citing N.J.S.A. 10:5-13)).

In sum, the UFL's plain language and its legislative history evidence a legislative intent to provide a limited immunity to banks from common law causes of action -- not to provide a new affirmative cause of action against a bank.

## D.

Few jurisdictions have squarely addressed the issue before us. The United States Court of Appeals for the Seventh Circuit, for instance, found that the Illinois "UFA did not create the cause of action. Rather, the UFA is a defense to such an action unless the bank has actual knowledge that the fiduciary is breaching his fiduciary obligations or the bank acts with bad faith." See Appley v. West, 832 F.2d 1021, 1031 (7th Cir. 1987); cf. Master Chem. Corp. v. Inkrott, 563 N.E.2d 26, 29 (Ohio 1990) ("The Uniform

18

Fiduciaries Act provides a defense, when asserted under Civ. R. 8(C), for those who knowingly deal in good faith with an authorized fiduciary.").

Although this is the first time this Court has directly addressed this issue, nothing in our jurisprudence is inconsistent with the position we take today. In New Amsterdam Casualty Co., the plaintiffs brought suit "purely in tort for damages," alleging that the defendant banks were "participants" in a receiver's embezzlement of funds from an insolvent company. 117 N.J. Eq. at 269. The plaintiffs claimed that the banks from "which the checks were drawn and the banks receiving them, respectively, paid and received them with actual knowledge that [the receiver] was committing breaches of his obligations as receiver, or with knowledge of such facts as amounted to bad faith." Ibid. The chancery court stated that the UFA "renders a bank immune from liability in honoring a fiduciary's check, 'unless the bank pays the check with the actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary.'" Id. at 270 (emphasis added) (quoting N.J.S.A. 3A:41-7 (repealed 1981)).

Contrary to Lembo's assertion, New Jersey Title Insurance Co. did not sanction an affirmative cause of action under the UFL. In that case, an attorney embezzled real-estate-closing funds from his attorney trust account at National State Bank, issuing dozens of checks to himself and cashing them

19

either at the bank or at Atlantic City casinos, instead of paying off mortgages. 163 N.J. at 145-46. New Jersey Title Insurance Company satisfied the outstanding mortgages and then filed an action against the bank, alleging that the bank "had 'actual knowledge that . . . [the attorney's] intended use of the trust funds would breach fiduciary duties,' and that the [b]ank was negligent and acted in bad faith in violation of N.J.S.A. 3B:14-55." Id. at 146.

In New Jersey Title Insurance Co., neither the Supreme Court nor the Appellate Division, see 319 N.J. Super 311 (App. Div. 1999), identified the precise causes of action set forth in the complaint filed against the bank. Neither court stated that the cause of action was a statutory claim based on the UFL. Our Court was presented with two issues -- defining the "bad faith" standard under the UFL and determining whether the bank lost its UFL immunity because it acted in "bad faith." 163 N.J. at 145, 150. The Court did not indicate that the UFL gave rise to an affirmative claim but rather confirmed that under the UFL "a bank would be immune from liability in honoring a fiduciary's check" unless it is shown that the bank acted with actual knowledge of the breach of a fiduciary's obligations or with knowledge of facts establishing that its actions amounted to bad faith. Id. at 149 (emphasis added).

20

Because we hold that the UFL does not provide an affirmative cause of action, the Appellate Division erred in remanding to allow Lembo to amend the complaint to assert such a claim.[2]

IV.

In rendering this decision, we are mindful that interposing an affirmative UFL cause of action -- particularly in this case -- might undermine the UCC's "comprehensive framework for allocating and apportioning the risks of handling checks." City Check Cashing, Inc., 166 N.J. at 57. Lembo is simply attempting to outflank that comprehensive scheme by bringing back to life a time-barred UCC conversion claim.

Generally, a bank will be strictly liable for accepting a check with a forged indorsement. See N.J.S.A. 12A:3-420 and cmt. 1 (stating that this section "covers cases in which a depositary or payor bank takes an instrument bearing a forged indorsement"); see also Leeds v. Chase Manhattan Bank, N.A., 331 N.J. Super. 416, 422 (2000) ("As a depository bank under the Uniform Commercial Code, [the defendant bank] is strictly liable for conversion on a forged or stolen instrument." (citation omitted)). Lembo's complaint alleges that TD Bank accepted checks payable to Lembo with forged

---

[2] Given our resolution of this issue, we do not address Lembo's claims that Marchese and Wright were acting in the role of "constructive trustees" to qualify as fiduciaries under the UFL.

21

indorsements.  In the absence of a defense under either N.J.S.A. 12A:3-405 or

N.J.S.A. 12A:3-406,[3] TD Bank would have been strictly liable for conversion

of the funds had Lembo filed a timely UCC claim.

"[A]n action for conversion of an instrument . . . must be commenced

within three years after the cause of action accrues," N.J.S.A. 12A:3-118(g),

and the discovery rule does not extend the limitations period, N.J. Lawyers'

Fund for Client Prot. v. Pace, 186 N.J. 123, 125-26 (2006).  Lembo did not file

a UCC claim within the requisite three-year statute-of-limitations period.[4]

---

[3]  N.J.S.A. 12A:3-405 provides a limited defense to a bank when the bank has
acted in good faith and an employer -- to whom a check is payable -- entrusts
"responsibility" for the check to an employee, who then forges an indorsement.
Additionally, N.J.S.A. 12A:3-406(a) provides a limited defense when the
person to whom a check is made payable fails "to exercise ordinary care."
However, if the bank also fails to exercise ordinary care that substantially
contributes to the loss, then the loss is allocated between the person and the
bank.  See N.J.S.A. 12A:3-406(b).

[4]  In recognizing the primacy of the UCC in assigning responsibility for checks
with forged indorsements, the Appellate Division held in Leeds that the actual
knowledge or bad faith defense of the UFL could not be invoked by a bank as
a defense to a UCC strict-liability claim based on a bank's "accepting a
forged/altered check for deposit."  331 N.J. Super. at 424-28.  In that case, an
attorney altered a client's settlement check and made it payable to himself, and
then deposited the check in his attorney trust account at the defendant bank.
Id. at 419.  The Appellate Division rejected "the argument that the shield of
the UFL super[s]edes the liability imposed by § 3-420," reasoning that a bank
is not insulated from liability because "a dishonest fiduciary, indeed a forger"
converts funds entrusted to him "for which the bank would otherwise be
strictly liable" by depositing the forged check.  Id. at 427.

We concur with the Appellate Division that Lembo's common law conversion claim is preempted by the UCC. We also agree with its conclusion that the common law negligence claim cannot be sustained.

In light of the UCC's well-delineated scheme assigning and allocating liability in the processing of checks with forged indorsements, "[a]bsent a special relationship, courts will typically bar claims of non-customers against banks." See City Check Cashing, Inc., 166 N.J. at 60. Accordingly, "unless the facts establish a special relationship between the parties created by agreement, undertaking or contact, that gives rise to a duty, the sole remedies available are those provided in the Code." See id. at 62.

Lembo's complaint does not allege that Lembo had a banking or other relationship with TD Bank, much less a special relationship "created by agreement, undertaking or contact." See ibid. That Marchese and Wright had personal accounts at TD Bank where the forged checks were cashed and deposited did not establish a "special relationship" between TD Bank and Lembo. The Appellate Division therefore properly affirmed the dismissal of the common law claims.

Because we hold that the UFL does not give rise to an affirmative cause of action, we need not address whether such a claim has been sufficiently pled in the complaint, even under the permissive standard of Rule 4:6-2(e). See

23

Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (stating that a complaint should be searched "with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary" (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957))).

## V.

In summary, we hold that the UFL does not authorize an affirmative cause of action against a bank but rather provides a bank with a limited immunity from liability for failing to take notice of and action on the breach of a fiduciary's obligation. The UFL does not displace, subsume, or supplement common law claims. When an action is brought against a bank, the UFL provides that a bank's liability depends on whether the bank acted with actual knowledge or bad faith in the face of a fiduciary's breach of his obligations.

We thus reverse the judgment of the Appellate Division remanding the matter to allow Lembo to amend the complaint to state a claim under the UFL and reinstate the trial court's dismissal of this action.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON did not participate.

24